J-A32038-16

2017 PA Super 50

| | |
|---|---|
| SHANTICE TILLERY, IN HER OWN RIGHT AND PARENT AND NATURAL GUARDIAN ON BEHALF OF HER MINOR SON, SHAMIR D. TILLERY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| THE CHILDREN'S HOSPITAL OF PHILADELPHIA, CHILDREN'S HEALTHCARE ASSOCIATES, INC., MONIKA GOYAL, M.D., JOEL FEIN, M.D., KYLE NELSON, M.D. | |
| APPEAL OF: THE CHILDREN'S HOSPITAL OF PHILADELPHIA AND MONIKA GOYAL, M.D. | |
| | No. 1508 EDA 2016 |

Appeal from the Judgment Entered April 15, 2016
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: December Term, 2011 No. 02168

BEFORE: DUBOW, J., RANSOM, J., and PLATT, J.*

OPINION BY PLATT, J.:                    **FILED FEBRUARY 28, 2017**

Appellants, The Children's Hospital of Philadelphia (CHOP) and Monica Goyal, M.D., appeal from the judgment entered in favor of Appellee, Shantice Tillery, in her own right and as parent and natural guardian on behalf of her minor son, Shamir D. Tillery (Minor-Plaintiff), pursuant to the jury's verdict. We affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

We take the following factual and procedural background from the trial court's April 15 and June 3, 2016 opinions.

On December 21, 2009, eleven month old [Minor-Plaintiff] went to the [CHOP] Emergency Department suffering from fever and difficulty breathing. He was sent home a few hours later with a differential diagnosis including upper respiratory infection and cough with a less likely differential diagnosis of pneumonia. Minor-Plaintiff returned to CHOP the next day, suffering from worsening symptoms, including high fever, irritability, increasing pulse and respiratory rates, dehydration, and lethargy. He was examined by the attending physician, [Dr. Goyal], and several nurses. [Dr.] Goyal ordered chest x-rays and ruled out pneumonia and viral upper respiratory infections as causes of the symptoms. Without any further diagnostic testing, [Minor-Plaintiff] was discharged with a treatment plan consisting of supportive care, a follow-up with a primary physician and return to emergency room instructions.

Minor-Plaintiff returned to CHOP Emergency Department the next day, December 23, 2009, at 8:43 p.m. After several examinations by nurses, Minor-Plaintiff was examined by Ram Bishnoi, M.D. at 9:09 p.m. and again at 10:19 p.m. Over an hour later, at approximately 11:25 p.m. that same evening, the attending physician, [] Dr. Kyle Nelson [] noted that Minor-Plaintiff had been seen in the ER the two previous days and was diagnosed with bronchiolitis. Dr. Nelson's differential diagnosis included fever, bronchiolitis, possible pneumonia, possible serious bacterial infection, and possible dehydration. Dr. Nelson offered a treatment plan including IV fluids, checking labs, and reassessing for a possible lumbar puncture. Nearly an hour later, at 12:20 a.m. on December 24, 2009, [Minor-Plaintiff] was transferred to another attending physician, [] Dr. Joel Fein []. Blood tests revealed elevated white blood cell counts and an elevated C-reactive protein [(CRP)]. [Minor-Plaintiff's] condition also continued to deteriorate despite fluid intake. Thus, Dr. Fein ordered a lumbar puncture, which was not completed until nearly three hours later at 3:03 a.m. The lumbar puncture results led to a diagnosis of meningitis and antibiotics were immediately ordered.

Shortly after 5:00 a.m., [Minor-Plaintiff] was admitted to the CHOP [Pediatric Intensive Care Unit (PICU)]. He was later

diagnosed with streptococcus pneumoniae meningitis, bilateral hearing loss, and brain damage.

[Minor-Plaintiff's] mother, [Appellee], initiated this medical malpractice litigation in May, 2012 against CHOP, [Dr.] Goyal, [Dr.] Fein, and [Dr.] Nelson for various claims of negligence.

For over five weeks from October 19, 2015 to November 16, 2015, [the trial c]ourt presided over the trial of this medical malpractice action. On November 16, 2015, the jury found in favor of [Appellee] and against [] CHOP and [Dr.] Goyal, but found in favor of [Dr.] Nelson and [Dr.] Fein. The jury found that the negligence of CHOP and [Dr.] Goyal [was] the factual cause of the harm to Minor-Plaintiff. The jury assessed 40% of the negligence to [Dr.] Goyal and 60% of the negligence to CHOP for the treatment rendered by resident Ram Bishnoi, M.D. The jury awarded a total verdict of $10,138,000.00 divided up as: (1) $1,120,000.00 for Minor-Plaintiff's future loss of earnings and earning capacity; (2) $7,500,000.00 for Minor-Plaintiff's past and future pain and suffering, embarrassment and humiliation, disfigurement, and loss of enjoyment of life and life's pleasures; and (3) $22,000.00 per year for the years 2016-2085 for Minor-Plaintiff's future medical and other related expenses (for a total of $1,518,000.00).

(Trial Court Opinion, 4/15/16, at 3-4).

[Appellee] filed a Written Post-Trial Motion for Delay Damages on November 23, 2015 and [Appellants] filed their Post-Trial Motions on November 30, 2015[,] with a Supplemental Post-Trial Motion filed on January 19, 201[6]. The [c]ourt held oral argument on April 12, 2016. On April 1[5], [2016] th[e c]ourt entered an Order denying [Appellants'] Post-Trial Motions. Pursuant to Rule 227.1(a)(2) of the Pennsylvania Rules of Civil Procedure and the 1983 Comments, th[e c]ourt entered a Judgment Order in favor of [Appellee] and against [Appellants] in the sum of $11,391,640.08.

On [April 27], 2016, [Appellants] filed an Emergency Motion to Vacate Judgment. On May 12, 2016, the[e c]ourt denied the Motion. That same day, [Appellants] filed a Notice of

Appeal regarding the [c]ourt's April 1[5] [o]rder denying [their] Post-Trial Motions.[1]  On June 3, 2016, th[e c]ourt filed an Opinion in accordance with Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure in response to [Appellants'] appeal. [The court did not order Appellants to file a Rule 1925(b) statement of errors complained of on appeal.  *See* Pa.R.A.P. 1925.]

(Trial Court Opinion, 6/03/16, at 2).

Appellants raise five questions for this Court's review.

1. Whether [Appellants] are entitled to JNOV where [Appellee's] experts' opinions were based solely on their own experience and expertise, not scientific or empirical evidence, and, hence, were both inadmissible and insufficient to establish causation under *Rohm & Haas Co. v. Snizavich*, 83 A.3d 191, 195 (Pa. Super. Ct. 2013)?

2. Whether the trial court erred by failing to instruct the jury on the "two schools of thought doctrine" in determining whether the standard of care required [Appellants] to treat a bacterial infection with steroids, in circumstances where [Appellee's] and [Appellants'] medical experts presented two competing views regarding this subject and where [Appellee's] own expert admitted that use of steroids in treating meningitis was "controversial" at the time of [Minor-Plaintiff's] treatment?

3. Whether the trial court erred in allowing [Appellee's] counsel to read to [Dr. Poe] a totally irrelevant hearsay statement taken in 2013 from [CHOP's] website, where the statement, which post-dated the treatment by four years, was used to establish the standard of care and, hence, caused [Appellants] great prejudice?

4. Whether the trial court erred in allowing [Appellee's] neuro-otologist expert to present standard of care expert testimony

_____

[1] On May 5, 2016, Appellants filed an emergency motion to vacate the judgment pursuant to 42 Pa.C.S.A. § 742, which the trial court denied. Appellants' appeal of that order is before this panel at docket number 1823 EDA 2016.

against [Appellant] pediatric emergency medicine physicians in circumstances where [Appellee's] expert was neither board-certified nor practiced in the same sub-specialty as [Appellant] physicians, was not engaged in practice in emergency room settings in the hospitals where he worked, was not familiar with the standard of care and hence, was not qualified under MCARE to present expert testimony against the [Appellant] physicians?

5. Whether the trial court erred by not reducing the excessive verdict and in not reducing [Minor-Plaintiff's] future medical expenses to present value before entering judgment as required by MCARE for purposes of calculating the judgment and delay damages?

(Appellants' Brief, at 5-6) (emphases omitted).

In their first issue, Appellants challenge the trial court's denial of their motion for judgment notwithstanding the verdict (JNOV). (*See id.* at 5; 20-32). Our standard of review of this claim is well-settled.

Our standard of review of an order denying judgment n.o.v. is whether, reading the record in the light most favorable to the verdict winner and granting the benefit of every favorable inference, there is sufficient competent evidence to support the verdict. Any conflict in the evidence must be resolved in the verdict winners' favor. Judgment n.o.v. may be granted only in clear cases where the facts are such that no two reasonable minds could fail to agree that the verdict was improper.

*Miller v. St. Luke's Univ. Health Network*, 142 A.3d 884, 896 (Pa. Super. 2016) (citations omitted).

In this case, Appellants argue that that the court should have granted their motion for JNOV where Appellee's experts offered opinions based solely on their expertise, not on science or empirical evidence. (*See* Appellants' Brief, at 20-32). Specifically, Appellants observe that, "[a]s in all medical malpractice cases, [Appellee] [bore] the burden of proving a causal

- 5 -

connection between [Appellants'] alleged wrongful act and [Minor-Plaintiff's] injuries." (***Id.*** at 20) (footnote omitted). Therefore, they claim that "[Appellee's] failure to prove causation through admissible, competent evidence requires entry of JNOV in [Appellants'] favor." (***Id.***). Appellants' claim lacks merit.

> Because medical malpractice is a form of negligence, to state a *prima facie* cause of action, a plaintiff must demonstrate the elements of negligence: a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of harm. With all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation.

***Fessenden v. Robert Packer Hosp.***, 97 A.3d 1225, 1229 (Pa. Super. 2014), *appeal denied*, 113 A.3d 280 (Pa. 2015) (citation omitted).

Further,

> An expert witness proffered by a plaintiff in a medical malpractice action is required to testify to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered. However, expert witnesses are not required to use magic words when expressing their opinions; rather, the substance of their testimony must be examined to determine whether the expert has met the requisite standard. Moreover, in establishing a *prima facie* case, the plaintiff [in a medical malpractice case] need not exclude every possible explanation of the accident; it is enough that reasonable minds are able to conclude that the preponderance of the evidence shows the defendant's conduct to have been a substantial cause of the harm to [the] plaintiff.

***Stimmler v. Chestnut Hill Hosp.***, 981 A.2d 145, 155 (Pa. 2009) (citations, quotation marks, and emphasis omitted).

In this case, the trial court observed, "[Appellee's] experts provided testimony with a reasonable degree of certainty that [Appellants'] failure to use proper testing methods under the circumstances prevented the timely treatment of the meningitis." (Trial Ct. Op., 4/15/16, at 7). We agree.

At trial, Appellee presented the testimony of several experts to support her theory that, had Dr. Goyal performed certain tests based on Minor-Plaintiff's presentation, their results would have revealed the existence of a bacterial infection, which would have warranted further evaluation, Minor-Plaintiff's admission, and the administration of antibiotics. For example, Appellee's expert, Ron Waldrop, M.D., a board certified pediatric emergency medicine physician with twenty-five years' experience, testified to a reasonable degree of medical certainty that, had Dr. Goyal performed:

> any bloodwork [] at all such as CBC with a white blood cell count or CRP, I firmly believe those would have been abnormal and elevated and prompt even more workup which would include a blood culture. And if so elevated I think it probably would have led to admission and observation and intervention.

(N.T. Trial, 10/21/15 (Vol. II), at 13; **see id.** at 10; **see also** N.T. Trial, 10/20/15 (Vol. I), at 202-03).

In forming his opinion, Dr. Waldrop relied on Minor-Plaintiff's hospital records, a peer review journal, and the chapter he wrote in a standard pediatric textbook about "how to manage children and look for risk factors in children who have bacteria circulating in their blood, but you [cannot] find

the source." (N.T. Trial, 10/21/15 (Vol. II), at 9; *see id.* at 6-10; *see also* N.T. Trial, 10/20/15 (Vol. I), at 208-09).

Similarly, Appellee presented the expert testimony of Michael F. Tosi, M.D., the chief of pediatric infectious disease at Mt. Sinai Hospital, with over thirty-one years' experience treating pediatric infectious disease. (*See* N.T. Trial, 10/22/15 (Vol. III), at 18-19). Dr. Tosi testified that, in his thirty-one years of experience, Minor-Plaintiff's CRP value was one of highest he had seen in a patient with a severe bacterial infection. (*See id.* at 46-47). Therefore, he opined that, had tests been performed sooner, they would have revealed a "highly significant [CRP level] and would be strongly suggestive of a serious bacterial infection[,]" which would have required, "at a minimum, a blood culture, perhaps a urine culture and absolutely administration of antibiotics intravenously in the hospital." (*Id.* at 47, 49). The doctor opined that "the injuries that [the Minor-Plaintiff] sustained would have been avoided" if the proper tests had been performed and the meningitis diagnosed sooner. (*Id.* at 50). Finally, Dr. Tosi stated that he based his opinions relating to causation on the medical literature and his experience with nearly two hundred cases of pediatric bacterial meningitis. (*See id.* at 56).

Dr. Jonathan Megerian, a pediatric neurologist with over fifteen years of experience in the emergency department, testified that, based on Minor-Plaintiff's "extraordinarily elevated CRP" and other specific data from his

medical chart, earlier testing by Dr. Goyal would have revealed "[a] severe systemic illness that is a bacterial infection, sepsis." (N.T. Trial, 10/28/15 (Vol. VII), at 54-55; *see id.* at 7-9, 58-59). The doctor further stated that the later scientific findings on the computed tomography (CT) and magnetic resonance imaging (MRI) were "days in the making," and therefore would have been present if Minor-Plaintiff had been tested sooner. (*Id.* at 90; *see id.* at 55, 89). In reaching his conclusions, Dr. Megerian reviewed Minor-Plaintiff's records, results of his radiological studies, the reports of other professionals in the case, deposition testimony, and his own research and experience dealing with children in the emergency department. (*See id.* at 29-31).

Based on the foregoing, as well as our thorough review of the entire substance of Appellee's experts' testimony, Appellants' claim that the opinions were speculative, based solely on their personal conjecture and expertise, and not on science or empirical evidence, is belied by the record. Therefore, the trial court properly denied Appellants' motion for a JNOV, "where the facts are [not] such that no two reasonable minds could fail to agree that the verdict was improper." *Miller*, *supra* at 896; *see also Stimmler*, *supra* at 155.[2] Appellants' first issue lacks merit.

---

[2] Moreover, Appellants' reliance on *Snizavich v. Rohm & Haas Co.*, 83 A.3d 191 (Pa. Super. 2013), *appeal denied*, 96 A.3d 1029 (Pa. 2014), is not legally persuasive. (*See* Appellants' Brief, at 21-22, 29). The plaintiff in
*(Footnote Continued Next Page)*

In their second claim, Appellants maintain that they "are entitled to a new trial as a result of the trial court's failure to give the 'two schools of thought doctrine' instruction to the jury[.]" (Appellants' Brief, at 32; *see id.* at 32-37). They argue that "the evidence established that there are clearly two schools of thought when it comes to treatment of suspected bacterial meningitis with steroids." (*Id.* at 34). We disagree.

> It is well established that a trial judge is bound to charge the jury only on the law applicable to the factual parameters of a particular case and that it may not instruct the jury on law inapplicable to the matter before it. A new trial will be warranted if a jury instruction is fundamentally erroneous and may have been responsible for the verdict.

*(Footnote Continued)* _____

*Snizavich* maintained that her husband died from brain cancer caused by chemicals to which he was exposed during his employment in the defendant's facilities. *See id.* at 193. The plaintiff's expert based his expert opinion on his own knowledge and experience, relying on a report that was inconclusive regarding the cause of the brain cancer found in defendant's employees and the relationship between the chemicals used in the facility and brain cancer. *See id.* at 197. In spite of the uncertain result of the report, the expert concluded that decedent's brain cancer was caused by exposure to an unknown chemical at defendant's facility. *See id.* He did not consider decedent's medical history, risk factors for brain cancer, facts in the medical record, or other potential causes of the cancer. *See id.* The Court in *Snizavich* found that this opinion would not assist the trier of fact where it did not "point to, rely on or cite some scientific authority—whether facts, empirical studies, or the expert's own research—that the expert has applied to the facts at hand and which supports the expert's ultimate conclusion." *Id.* This is inapposite to this case, in which Appellee's medical experts testified, based on specific scientific facts and medical literature, in addition to their own experience, that as a direct result of the delay in diagnosis and treatment, Minor-Plaintiff became profoundly deaf, sustained permanent brain-related injury, and had an increased risk of permanent harm.

*Choma v. Iyer*, 871 A.2d 238, 243 (Pa. Super. 2005) (*en banc*), *appeal denied*, 887 A.2d 231 (Pa. 2005) (citations omitted).

> The two schools of thought doctrine provides a complete defense to a malpractice claim. It directs that where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of recognized and respected professionals in his given area of expertise. . . .

*Id.* at 241 (citations and quotation marks omitted). Importantly, the two schools of thought doctrine does not apply to cases in which the issue is a defendant's failure to diagnose. *See Levine v. Rosen*, 616 A.2d 623, 628 (Pa. 1992). As aptly observed by the trial court:

> In the instant case, the issue of the two schools of thought doctrine was little more than a red herring. *See Rittenhouse v. Hanks*, 777 A.2d 1113, 1118 (Pa. Super. 2001). [Appellee's] case concerned whether [Appellants] were negligent in failing to provide the necessary testing and treat the bacterial infection [that] they would be aware of had the proper testing been performed. *See D'Angelis v. Zakuto*, 556 A.2d 431, 433 (Pa. Super. 1989). **In other words**, due to [Appellants'] failure to meet the standard of care in proper testing, **they failed to diagnose the bacterial meningitis, leading to**[] **Minor-Plaintiff's injury.** *See id.* Since this case regards a failure of diagnosis rather than competing theories of treatment, the instruction was not appropriate in this case. *See id.* (holding that question for jury was whether defendant doctor should have identified condition and hospitalized him for it, or at least ordered further testing, and thus instructions on two schools of thought doctrine was inapplicable).

(Trial Ct. Op., 4/15/16, at 11-12) (case citation formatting provided; emphases added). We agree.

After reviewing the testimony offered by Appellee's expert witnesses, we conclude Appellants have mischaracterized her malpractice claims and theories against them in this case. Appellee's experts testified that Appellants failed to diagnose Minor-Plaintiff's condition in a timely manner, which resulted in his injuries. Therefore, the trial court properly found that a two schools of thought instruction would have been inappropriate, and Appellants' argument to the contrary fails. *See Choma*, *supra* at 243; *Levine*, *supra* at 628.[3].

In their third claim, Appellants maintain that the trial court erred when it allowed evidence from CHOP's website over their objection. (*See* Appellants' Brief, at 37-44). Specifically, they argue that the website was inadmissible hearsay that was irrelevant and prejudicial. (*See id.*). Appellants' issue does not merit relief.

It is well-settled that "[e]videntiary rulings are committed to the sound discretion of the trial court, and will not be overruled absent an abuse of discretion or error of law." *Whitaker v. Frankford Hosp. of City of Phil.*, 984 A.2d 512, 522 (Pa. Super. 2009) (citations omitted). Importantly, if a party presents evidence about a certain issue, then they open the door to

_____

[3] Moreover, although the experts did disagree about whether the standard of care required the use of steroids for treatment, once bacterial meningitis is discovered, not only is this not relevant to the claims against Appellants for failure to diagnose, our review of the certified record reveals that none of Appellants' experts opined that there were "two schools of thought" on the treatment of bacterial meningitis.

rebuttal evidence that may not otherwise have been admissible. ***See***

***Duchess v. Langston Corp.***, 709 A.2d 410, 412 (Pa. Super. 1998),

*affirmed*, 769 A.2d 1131 (Pa. 2001).

Here, the trial court aptly explained:

> In the instant case, the [d]efense opened the door to the testimony regarding the website. In cross-examining Dr. Poe, [d]efense counsel brought up a number of texts and articles, including some written by highly ranked CHOP physicians, regarding diagnosis and treatment of bacterial meningitis that ostensibly refuted Dr. Poe's position that a work-up including antibiotics was necessary in Minor-Plaintiff's case. (***See, e.g.***, N.T Trial, 10/26/15 (Vol. I), at 67-69). In bringing out this testimony, [Appellants] created the implication that these figures and detailed statistics forwarded in these works, heavily emphasized by counsel, could be completely relied upon by other doctors. To combat this presumption, [Appellee] offered up evidence of a CHOP website, which, in 2013, stated that effective treatment of bacterial meningitis involves early antibiotic treatment. (***See id.*** at 83). This evidence was introduced to show the jury that the conclusions of several CHOP doctors in their articles did not necessarily represent the beliefs of all doctors regarding the proper treatment of bacterial meningitis, as CHOP's own website was later inconsistent with their conclusions. (***See id.*** at 83-84).
>
> Furthermore, the testimony regarding the website was non-hearsay because it was brought in to rebut the presumption created by the [d]efense and not for the truth of the matter asserted. Pennsylvania law defines hearsay as an out-of-court statement offered for the truth of the matter it asserts. [***See***] Pa.R.E. 801. In this case, [Appellee] offered the evidence regarding the website in rebuttal to the implication created by [Appellants] that all highly ranked physicians in CHOP were final in their conclusions regarding the diagnosis and treatment of bacterial meningitis. Given that the evidence was used as rebuttal rather than the truth of the matter asserted, it cannot be considered inadmissible hearsay. ***See*** Pa.R.E. 801.

(Trial Ct. Op., 4/15/16, at 31-32) (record citation formatting provided; one record citation added; footnote omitted).

After our thorough independent review of the relevant portions of the certified record, we agree with the sound reasoning of the trial court. Therefore, we conclude that the court did not abuse its discretion in admitting the CHOP website evidence. *See Whitaker*, *supra* at 522.

In their fourth allegation of error, Appellants maintain that the trial court erred "by allowing an unqualified expert to testify on [Appellee's] behalf." (Appellants' Brief, at 44; *see id.* at 44-51). Specifically, they argue that "Dr. Poe was not qualified to provide standard of care opinions against [Appellants] under the MCARE Act."[4] (*Id.* at 44). We disagree.

Because statutory interpretation of the MCARE Act presents a question of law, our standard of review is *de novo* and our scope of review is plenary. *See Bulebosh v. Flannery*, 91 A.3d 1241, 1243 (Pa. Super. 2014), *appeal denied*, 105 A.3d 734 (Pa. 2014).

> The General Assembly has directed in the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, that the object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. Generally speaking, the best indication of legislative intent is the plain language of a statute. Furthermore, in construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." 1 Pa.C.S. § 1903. . . .

---

[4] Medical Care Availability and Reduction of Error Act, 40 P.S. §§ 1303.101-910

- 14 -

*Rodgers v. Lorenz*, 25 A.3d 1229, 1231 (Pa. Super. 2011) (case citation

omitted).

The MCARE Act provides the following pertinent language regarding

expert witnesses:

**(a) General rule.**—No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

**(b) Medical testimony.**—An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

(1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

(2) Be engaged in or retired within the previous five years from active clinical practice or teaching.

Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

**(c) Standard of care.**—In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:

(1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

(2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).

(3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

**(d) Care outside specialty.**—A court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that:

(1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and

(2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence.

**(e) Otherwise adequate training, experience and knowledge.**—A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period.

40 P.S. § 1303.512.

In this case, Dennis S. Poe, M.D., Ph.D., a board-certified neuro-otologist surgeon and otolaryngologist,[5] has practiced pediatric

---

[5] A neuro-otolaryngologist is an "ear, nose[,] and throat doctor who does additional training after residency in . . . neurosurgical and skull base

*(Footnote Continued Next Page)*

otolaryngology since 1987, and is a professor of otology and laryngology at Harvard Medical School, thus satisfying the requirements of section 512(b). (*See* N.T. Trial, 10/23/15 (Vol. I), at 15, 20-21; *see also* 40 P.S. § 1303.512(b). He is an active otolaryngologist and surgeon at Boston Children's Hospital, Brigham and Women's Hospital, and Massachusetts Eye and Ear Infirmary, with extensive knowledge and experience regarding the results of a failure to diagnose bacterial meningitis, the precise care at issue in this case. (*See id.* at 15, 21, 26); *see also* 40 P.S. § 1303.512(c)-(e). Dr. Poe is also board certified in otolaryngology as well.

Therefore, we conclude that the trial court did not violate the provisions of the MCARE Act or abuse its discretion when it admitted Dr. Poe's standard of care expert testimony in this case.[6] *See Bulebosh*, *supra* at 1243; *Whitaker*, *supra* at 522.

In their fifth issue, Appellants argue that "the trial court erred by not reducing the excessive verdict and in not reducing [Appellee's] future

(Footnote Continued) ———————————

approaches [to] complex ear problems." (N.T. Trial, 10/23/15 (Vol. I), at 15, 20-21).

[6] Moreover, we note that Dr. Poe was Appellee's causation expert, and only provided limited standard of care testimony on the issue of whether antibiotics should have been administered **after** the diagnosis of bacterial meningitis. Therefore, this testimony was arguably irrelevant to the failure to diagnose claim against Appellants. Also, the jury found the doctor defendants to whom this standard of care testimony **did** apply, to be not negligent. Hence, even if the trial court had abused its discretion in allowing Dr. Poe to testify regarding this limited standard of care issue, there was no prejudice to any defendant.

medical expenses to present value before entering judgment as required by MCARE." (Appellants' Brief, at 51 (unnecessary capitalization omitted); *see id.* at 51-59). Specifically, they maintain that the pain and suffering award is excessive, the future medical expenses award should have been reduced to present value, and the court erred in awarding delay damages on the lump sum verdict. (*See id.* at 53-59). This issue does not merit relief.

Appellants argue first that the jury's $7.5 million compensatory damage award was so excessive that it shocks the conscience, and that the trial court erred when it failed to order either a new trial or remittitur. (*See id.* at 53-54). We disagree.

> The grant or refusal of a new trial because of the excessiveness of the verdict is within the discretion of the trial court. This [C]ourt will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. We begin with the premise that large verdicts are not necessarily excessive verdicts. Each case is unique and dependent on its own special circumstances and a court should apply only those factors which it finds to be relevant in determining whether or not the verdict is excessive.

*Tindall v. Friedman*, 970 A.2d 1159, 1177 (Pa. Super. 2009) (citations omitted). Similarly:

> Our standard of review from the denial of a remittitur is circumspect and judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant. The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption. Furthermore, [t]he decision to grant or deny remittitur is within the sole discretion of the trial court, and proper appellate review dictates this Court reverse such an

Order only if the trial court abused its discretion or committed an error of law in evaluating a party's request for remittitur.

***Renna v. Schadt***, 64 A.3d 658, 671 (Pa. Super. 2013) (citations and quotation marks omitted).

In this case, the trial court observed:

> . . . The testimony bore out that Minor-Plaintiff sustained permanent and total deafness in both ears, as well as severe brain damage that will inhibit his prospects for employment and many other of life's pleasures in the future. . . . Minor-Plaintiff sustained these injuries [as] an eleven-month [] old child and will have to live with those injuries for the rest of his life. . . . [T]he jury's verdict was fair, unprejudiced, and not excessive. Therefore, the factors clearly weigh against disturbing the jury's verdict[.]

(Trial Ct. Op., 4/15/16, at 35). We agree.

For example, Appellee Shantice testified that she is concerned about Minor-Plaintiff's future, including his ability to finish school, being on his own, and taking care of his own needs, because of his profound deafness and brain injury. (***See*** N.T. Trial, 10/28/15 (Vol. I), at 87-88). Deon Tillery, Minor-Plaintiff's grandmother, testified that he gets frustrated with his inability to communicate with his family or peers, experiences balance problems that have resulted in injuries, and she is concerned about his ability to do the things a child his age should be able to do. (***See*** N.T. Trial, 10/29/15 (Vol. I), at 110-12). Terrell A. Clark, Ph.D., Appellee's expert pediatric psychologist with a specialty in deaf and hard of hearing children, opined that Minor-Plaintiff's "language is not just delayed. . . . The core of it is that he has [a] language disorder." (N.T. Trial, 10/28/15 (Vol. I), at 127;

- 19 -

*see id.* at 106). Appellee's expert explained that Minor-Plaintiff's "ability to understand, to process, to take in, to retain, to express language is disordered . . . on [a] brain basis . . . because his brain can't do language. It's broken." (*Id.* at 128).

Dr. Peter Smith, Minor-Plaintiff's neurodevelopmental and behavioral pediatrician, testified that, because of Minor-Plaintiff's young age, he lacks "adaptive mechanisms" to overcome his disabilities. (N.T. Trial, 10/23/15 (Vol. IV), at 40; *see id.* at 5-6, 39). In other words, he explained that becoming profoundly deaf and sustaining brain-related injuries at one year of age is a "worst-case scenario" because "he doesn't have the compensatory intelligence and other things to . . . know what deafness is in a deep sense." (*Id.* at 41).

Based on the foregoing, and our independent review of the testimony, we conclude that the jury's $7.5 million non-economic damage award for the profound deafness and brain-related injury caused by Appellants' negligence fell "within the uncertain limits of fair and reasonable compensation." *Renna*, *supra* at 671 (citation omitted). Therefore, "[c]ognizant of the fact that the amount of pain and suffering damages is primarily a jury question," we agree with the trial court that the verdict was not "so grossly excessive as to shock our sense of justice." *Renna*, *supra* at 671-72 (citation omitted); *Tindall*, *supra* at 1177. Hence, the trial court did not abuse its

discretion in denying Appellants' request for a new trial or remittitur on this basis. *See Renna*, *supra* at 671; *Tindall*, *supra* at 1177.

Appellants next argue that, pursuant to section 509 of the MCARE Act, the trial court erred when it failed to reduce the jury's future medical expense award to present value before entering judgment.[7]  (*See* Appellants' Brief, at 54-56).  They maintain that the language of section 509 of the MCARE Act "clearly requires that future medical expenses be reduced to present value." (*Id.* at 55).  Appellants' claim fails.

Section 509 of the MCARE Act provides, in pertinent part, "future damages for medical and other related expenses shall be paid as periodic payments after payment of the proportionate share of counsel fees and costs based upon the present value of the future damages awarded pursuant to this subsection."  40 P.S. § 1303.509(b)(1).

Appellants rely on *Sayler v. Skutches*, 40 A.3d 135 (Pa. Super. 2012), *appeal denied*, 54 A.3d 549 (Pa. 2012), which they maintain "required that future medical damages be reduced to present value pursuant

---

[7] Appellee and the trial court both urge us to find that Appellants waived this issue for failing to address it in their post-trial brief or at argument. (*See* Appellee's Brief, at 48; Trial Court Opinion, 6/28/16, at 4-5).  However, although Appellants failed to raise this issue in their post-trial brief, the certified record reflects that counsel did raise it at argument on their post-trial motions.  (*See* N.T. Argument, 4/12/16, at 50).  While counsel's argument was admittedly brief, he expressly asserted that, "under [MCARE], future medicals have to be reduced to present value[,]" and asked if Appellee's counsel had any argument on the issue (which he did not). (*Id.*). Therefore, we decline to find waiver.

to Section 509 of the MCARE Act." (Appellants' Brief, at 55 n.30). However, this reliance is misplaced. In **Sayler**, this Court concluded that, pursuant to the plain language of section 509(b)(1), the future medical damages award that had accrued at the time of the decedent's death should be reduced to present value only to determine the amount of **attorney's fees**. **See Sayler**, **supra** at 140. Therefore, the conclusion of the **Sayler** Court is completely inapposite to Appellant's position.

Further, we find that the law prior to the enactment of the MCARE Act reflects a long-settled policy that awards of future medical expenses are not to be reduced to present value. For example, in **Yost v. West Penn Railways Co.**, 9 A.2d 368 (Pa. 1939), the Pennsylvania Supreme Court unambiguously stated that,

> Present worth does not apply to damages awarded for future pain, suffering and inconvenience. Nor does it apply to future medical attention. Future medical attention presupposes an out-of-pocket expenditure by the plaintiff. [The plaintiff] was entitled to have defendant presently place in her hands the money necessary to meet her future medical expenses, as estimated by the jury based upon the testimony heard, so that she will have it ready to lay out when the service is rendered. Damages for expected medical expenses and for future pain and suffering are entirely different from damages for loss of future earnings, which, of course, must be reduced to present worth.

**Yost v. West Penn Rys. Co.**, 9 A.2d 368, 369-70 (Pa. 1939) (citation omitted); **see also Renner v. Sentle**, 30 A.2d 220 (Pa. Super. 1943) (same).

Moreover, Appellants fail to produce any pertinent law to support an argument that the enactment of MCARE changed this policy.[8] (**See** Appellants' Brief, at 54-56). Therefore, based on the Commonwealth's long-standing policy, and the language of the statute, we conclude that the trial court properly interpreted the language of section 509 of the MCARE Act to require that future medical expenses are only to be reduced to present value for the purpose of calculating attorney fees and costs. **See Bulebosh**, **supra** at 1243. This argument fails.

Finally, Appellants argue that "the trial court erroneously molded the verdict to include an award of delay damages on the future medical expense award[.]" (Appellants' Brief, at 56 (emphasis omitted); **see id.** at 56-59). We disagree.

Delay damages are authorized by Pennsylvania Rule of Civil Procedure 238. Therefore,

> . . . the matter before us requires that we interpret a Pennsylvania Rule of Civil Procedure. This presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary. Therefore, we are not constrained by the

---

[8] Additionally, Appellants rely on **Nicholson-Upsey v. Touey**, 30 Pa. D. & C. 5th 168 (Phila. C.C.P. filed May 7, 2013), a case from the Philadelphia Court of Common Pleas. (**See** Appellants' Brief, at 55-56). Although this case is not binding on this Court, **see Echeverria v. Holley**, 142 A.3d 29, 36 n.2 (Pa. Super. 2016), it supports our conclusion that future medical expenses are only to be reduced to present value for the purpose of calculating the attorney fees. **See Nicholson**, **supra** at *20 (observing that "[section] 509(b)(1) of MCARE requires that future damages be reduced to present value to determine the proper attorney's fees[.]").

interpretation provided by the trial court. We must then analyze the trial court's [grant or] denial of delay damages pursuant to Rule 238, which we review for an abuse of discretion. . . .

When interpreting a Rule of Civil Procedure, the goal "is to ascertain and effectuate the intention of the Supreme Court." Pa.R.C.P. 127(a). In so doing, we must, to the extent possible, "give effect to all [of the rule's] provisions. When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Pa.R.C.P. 127(b). . . .

*Roth v. Ross*, 85 A.3d 590, 592-93 (Pa. Super. 2014) (case citations and some quotation marks omitted).

Pennsylvania Rule of Civil Procedure 238 provides, in pertinent part:

At the request of the plaintiff in a civil action seeking monetary relief for bodily injury . . . damages for delay shall be added to the amount of compensatory damages awarded against each defendant . . . found to be liable to the plaintiff in the verdict of a jury . . . and shall become part of the verdict, decision or award.

Pa.R.C.P. 238(a)(1).

In *Roth*, *supra*, a panel of this Court addressed the precise argument advanced by Appellants here. In that case, the plaintiff suffered injuries as a result of a motor vehicle accident with the defendant. The jury awarded judgment in the plaintiff's favor and the *Roth* Court found that he was entitled to delay damages on his future medical expenses. *See Roth*, *supra* at 593.

We observed that the unambiguous language of Rule 238(a)(1) requires that, "in all civil cases wherein the plaintiff seeks monetary relief for bodily injury, delay damages shall be added to compensatory damages

- 24 -

awarded to the plaintiff against each defendant found to be liable by the jury." *Id.* Because "future medical expenses are compensatory damages[,]" *id.* at 593 n.2, we concluded that "[f]uture medical expenses that will be incurred as a result of treatment of injuries sustained because of [] defendant's negligence are, by definition, monetary relief for bodily injury[]" under the Rule's plain meaning. *Id.* at 593. Therefore, this Court concluded that the plaintiff was entitled to delay damages on his future medical expenses award for bodily injuries he suffered due to the defendant's negligence.[9]

Hence, applying the foregoing analysis to the Minor-Plaintiff here, we conclude that the trial court properly awarded delay damages on his award for future medical expenses incurred as a result of bodily injuries caused by Appellants' negligence. *See Roth*, *supra* at 593; *see also Lilley*, *supra* at 212. Appellants' final claim of error does not merit relief.

Judgment affirmed.

---

[9] The *Roth* Court further observed that "[t]he fact that the damages are for future medical expenses, *i.e.* expenses not yet incurred, does not preclude the addition of delay damages to the award." *Roth*, *supra* at 594 (citation omitted); *see also Lilley v. Johns-Manville Corp.*, 596 A.2d 203, 212 (Pa. Super. 1991), *appeal denied*, 607 A.2d 254 (Pa. 1992) (stating appellant's contention that delay damages cannot apply to future injuries lacks merit).

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: _2/28/2017_