Michele FISHER and Lane Fisher, In their Own Right and Michele Fisher and Lane Fisher, Parents and Natural Guardians of Ryan Fisher, a Minor, Appellant,

v.

CENTRAL CAB COMPANY and Timothy Leach, Appellees.

Superior Court of Pennsylvania.

Argued Jan. 8, 2008.

Filed March 12, 2008.

Richard M. Golomb, Philadelphia, for appellant.

Allan D. Goulding, Jr., Morrisville, for appellees.

BEFORE: KLEIN, GANTMAN, and KELLY, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellants, Michele and Lane Fisher, in their own right and Michele and Lane Fisher, parents and natural guardians of Ryan Fisher, a minor, appeal from the judgment entered in favor of Appellees, Central Cab Company and Timothy Leach. We affirm.

¶ 2 The trial court opinion set forth the relevant facts of this appeal as follows:

On the morning of October 9, 2004, Appellants Michele Fisher and her son, Ryan Fisher, were injured in an automobile accident that occurred near Parkside Avenue at 41st Street in Philadelphia, PA. Michele Fisher was driving eastbound on Parkside Avenue with her then four-year-old son Ryan sitting in a car seat in the back seat of the car. At the same time, [Appellee Timothy Leach] was driving a Coach bus westbound on Parkside Avenue, while in the scope of employment for the other Appellee, Central Cab Company. Mr. Leach was transporting a group from Mount Olivet Baptist Church in Uniontown, PA, to a Baptist Convention at the Christ Community Church on 41st Street in Philadelphia. The bus departed Uniontown at 3:00 a.m. the same morning and had almost arrived at its destination when the accident occurred.

Mr. Leach stopped the bus at a green light at 41st [S]treet before beginning the turn onto 41st Street. As he began to make the left-hand turn, crossing into the eastbound lane of Parkside Avenue, contact was made between the two vehicles. Mr. Leach testified that he did not see any oncoming traffic before beginning to make his turn.

Two passengers on the bus observed ... Appellant's car prior to the impact with the bus. Natalie Winfrey ("Ms.Win-

frey"), who was sitting in the front seat on the right-hand side of the bus, testified that she saw Appellant's car from when it was approximately 50–100 feet from the bus. Ms. Winfrey testified that Appellant's car drove straight into the bus without slowing down, applying the brakes or changing direction. She estimated that Ms. Fisher's car was traveling between 40–45 miles per hour prior to the impact. Ms. Winfrey vocalized her concern more than one time that the approaching car was not stopping.

Another passenger, Alycia Goodson ("Ms.Goodson"), who was also sitting on the right hand side of the bus said that she turned to see ... Appellant's car approaching after hearing Ms. Winfrey's exclamation and observed [the] car from the time the bus was turning until the time of the accident. Ms. Goodson testified that Ms. Fisher's car did not slow down or try to avoid the bus at all. She also testified that Mr. Leach stopped at the green light before turning and used his turn signal.

At the bus' destination, Christ Community Church on 41st Street, there were already people outside waiting for [the] arrival of the passengers. One of whom, Susan McCloud ("Ms.McCloud") witnessed the accident while she was standing on a nearby corner. Ms. McCloud testified that ... Appellant's vehicle did not attempt to slow down or stop and that she saw it drive directly into the turning bus. She also testified that the bus had on its turn signal.

At both her discovery deposition and at trial, Ms. Fisher was unable to give testimony about the details of the car accident because she had no recollection of the accident or her drive that morning after being left briefly unconscious by the impact.

(Trial Court Opinion, entered August 14, 2007, at 1–3) (internal citations to the record omitted).

¶ 3 Appellants commenced this action by filing a negligence complaint on July 21, 2005. On October 31, 2005, Appellees field an answer with new matter. In their new matter, Appellees asserted:

[Appellant] Michele Fisher was operating her vehicle at [an] excessive rate of speed under the circumstances, she failed to maintain her vehicle under full proper control, that she failed to observe other vehicles on the roadway, that she failed to yield to another vehicle already in the intersection, and that she failed to take appropriate and reasonable steps for her own safety, the safety of her passengers and the safety of other motorists on the roadway.

(Answer With New Matter, filed 10/31/05, at 4). Appellants filed a reply to the new matter on November 2, 2005.

¶ 4 On March 28, 2007, a jury found that Mr. Leach, acting on behalf of Central Cab Company, was not negligent. Appellants timely filed a post-trial motion on March 29, 2007. In their motion, Appellants argued the court had erred by permitting Ms. Winfrey, a lay witness, to opine about the approximate speed of the Fisher vehicle. By order entered July 9, 2007, the court denied Appellants' post-trial motion.

▆▆ ¶ 5 Appellants filed their notice of appeal on July 10, 2007. The court did not order Appellants to file a concise statement pursuant to Pa.R.A.P.1925(b). On September 10, 2007, Appellants filed a *praecipe* to enter judgment on the verdict.[1]

1. Appellants purport to appeal from the trial court's denial of their post-trial motions. Such orders are interlocutory and generally

not appealable. *Brown v. Philadelphia College of Osteopathic Medicine,* 760 A.2d 863, 865 (Pa.Super.2000), *appeal denied,* 566 Pa.

¶ 6 Appellants now raise one issue for our review:

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR WHEN IT ALLOWED A LAY WITNESS TO OFFER AN OPINION ABOUT THE SPEED OF AN ONCOMING VEHICLE, EVEN THOUGH NO FOUNDATION WAS LAID FOR THE WITNESS TO DO SO?

(Appellant's Brief at 4).

■ ¶ 7 In reviewing a claim of error regarding the admissibility of evidence, we note:

The question of whether evidence is admissible is a determination that rests within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the court clearly abused its discretion.

*Moroney v. General Motors Corp.,* 850 A.2d 629, 632 (Pa.Super.2004), *appeal denied,* 580 Pa. 714, 862 A.2d 1256 (2004).

■ ¶ 8 Appellants assert Ms. Winfrey could not provide an accurate estimate of the speed of Ms. Fisher's vehicle, because Ms. Fisher was driving directly toward Ms. Winfrey. Appellants also maintain that if Ms. Winfrey saw Ms. Fisher's vehicle approximately fifty (50) to one hundred (100) feet from the bus, traveling at forty-five (45) miles per hour, then Ms. Winfrey saw the oncoming vehicle for about one second. Under these circumstances, Appellants insist Ms. Winfrey did not have an adequate opportunity to observe the vehicle and estimate its speed, and the trial

court erred by admitting Ms. Winfrey's opinion testimony. Appellants claim they suffered prejudice due to the admission of this testimony, because no other basis existed for the jury to find in Appellees' favor. Appellants conclude this Court must remand the matter for a new trial. We disagree.

¶ 9 "In *Shaffer v. Torrens,* 359 Pa. 187, 58 A.2d 439 (1948), the [C]ourt stated that the requirements for admissibility of lay witness estimations of speed include (1) an observation of the vehicular movement in question; and (2) a recognition of impressions of like vehicles at relative speeds." *Radogna v. Hester,* 255 Pa.Super. 517, 388 A.2d 1087, 1088 (1978).

Other decisions have required that the witness have something more than just a "fleeting" glance of the vehicle in question, ... the important consideration being that the witness have at least a minimum of time to make a reasonable estimation of speed. Cases which have rejected a witness' observation because the witness did not see the vehicle in motion for more than a few feet before the collision have indicated that the witness' testimony was not admissible because of the brevity, the fleeting nature of the observation. However, the court has never attempted to establish any minimum distance requirement for competency of lay witness estimates.

There are other cases in which the distance traveled by the moving vehicle

---

632, 781 A.2d 137 (2001). Rather, the subsequent judgment is appealable. *Id.* A final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction. *Drum v. Shaull Equipment and Supply Co.,* 787 A.2d 1050 (Pa.Super.2001), *appeal denied,* 569 Pa. 693, 803 A.2d 735 (2002). In the present action, Appellants filed their notice of appeal on July 10, 2007. However, judgment on the verdict was not entered until

September 10, 2007. Thus, Appellants' notice of appeal relates forward to September 10, 2007, the date judgment was entered and copies of the judgment were distributed to all the appropriate parties. *See* Pa.R.A.P. 905(a) (stating notice of appeal filed after court's determination but before entry of appealable order shall be treated as filed after such entry and on date of entry).

during the period of observation has been appreciable, yet the court has rejected the witness' testimony because the moving vehicle had come directly toward the witness, making any estimation of speed speculative. The test for admissibility of lay witness estimations of speed, therefore, is not strictly connected with evidence of the distance traversed by the vehicle in question but, rather, depends upon the existence of an overall opportunity for adequate observation, in addition to the witness' prior experience with moving vehicles. Evidence of the distance over which the observed vehicle moved during the period of observation will go to the weight of the witness' estimation. If the distance is exceedingly small, the court may refuse to allow the witness to offer an estimate of speed because it is apparent that the witness had only a "fleeting" glimpse of the moving vehicle.

*Id.* at 1088–89 (internal citations and footnotes omitted). *See also Heacox v. Polce,* 392 Pa. 415, 416, 141 A.2d 229, 232 (1958) (stating plaintiff did not have sufficient time to observe speed of defendant's vehicle immediately before impact; plaintiff stepped into lane, looked up, and saw defendant's vehicle "practically on top of me...."); *Catina v. Maree,* 272 Pa.Super. 247, 415 A.2d 413, 419 (1979), rev'd on other grounds, 498 Pa. 443, 447 A.2d 228 (1982) (holding trial court properly excluded testimony concerning speed of vehicle where witness observed vehicle travel "on a diagonal" for thirty-five (35) feet on poorly lit road; estimate of speed "may not be predicated on such a slender data base ...").

¶ 10 Instantly, Ms. Winfrey is licensed to drive in Pennsylvania and has driven for the last eighteen (18) years. (N.T. Trial, 3/27/07, at 64; R.R. at 312a). On the date of the accident, Ms. Winfrey sat in the front row of the bus, on the right-hand side. (*Id.* at 50; R.R. at 298a). From her seat, Ms. Winfrey looked out the front window to view the approaching traffic. (*Id.*) At trial, Ms. Winfrey initially described the accident as follows:

> Basically, we were in our turn, making the turn to head on to the church. We were basically at the church. And [Ms. Fisher's] car was fast approaching onto us and she wasn't stopping. And basically, I said slowly under my breath, she's not stopping, she's not stopping, and then vocally louder I began to say that.

(*Id.*)

¶ 11 Ms. Winfrey estimated Ms. Fisher's vehicle was "about 50 to 100 feet away" from the bus when she first saw it. (*Id.* at 53; R.R. at 301a). At that point, Ms. Winfrey believed Ms. Fisher's vehicle "was far back enough that I thought it was going to stop...." (*Id.* at 52; R.R. at 300a). Ms. Winfrey continuously watched Ms. Fisher's vehicle until the time of the collision. (*Id.* at 53; R.R. at 301a). Although Ms. Winfrey could not remember how many seconds elapsed from the time she first saw the vehicle until the time of the collision, she testified that Ms. Fisher's vehicle did not slow down, change directions, or swerve to avoid the collision. (*Id.* at 53–54; R.R. at 301a–302a). Ms. Winfrey also opined about the speed of Ms. Fisher's vehicle:

> [WINFREY]: I would say it was going at least 40 to 45 miles per hour.
>
> [DEFENSE COUNSEL]: From the time—based on your experience as a driver and the things you observed that day between the time you first saw it until the time of the collision, did [Ms. Fisher's] vehicle have sufficient time to stop?

[WINFREY]: Definitely.

(*Id.* at 54–55; R.R. at 302a–303a).

¶ 12 Contrary to Appellants' arguments, Ms. Winfrey had an adequate opportunity to observe Ms. Fisher's vehicle. From her seat at the front of the bus, Ms. Winfrey had an unobstructed view through the windshield. When Ms. Winfrey first noticed Ms. Fisher's vehicle, it was far enough away from the bus that Ms. Winfrey believed it would stop short of a collision. Ms. Fisher, however, did not stop. As the bus was in its turn, Ms. Winfrey continuously watched Ms. Fisher's car. Prior to impact, Ms. Winfrey vocalized her fears, saying: "She's not stopping." Ms. Winfrey's comment even caused others on the bus to turn and notice the oncoming vehicle. Under these circumstances, we agree with the trial court's conclusion that "Ms. Winfrey's observation constitutes more than just a 'fleeting glimpse.'" (Trial Court Opinion at 6). Consequently, Ms. Winfrey's testimony satisfied the requirements for admissibility of lay witness estimations of speed. *See Radogna, supra.*

¶ 13 Moreover, the trial court noted Ms. Winfrey's testimony did not prejudice Appellants:

> Here, the jury found … Appellees … not negligent at the conclusion of the trial. Appellants contend that Ms. Winfrey's testimony had been excluded from the trial that a verdict would have been returned in their favor. Appellants argue that no other basis existed upon which the jury could have faulted Appellant, Ms. Fisher. This argument is misguided as the jury never faulted Ms. Fisher. Instead the jury found that Appellee, Mr. Leach, acting on behalf of Central Cab Co., was **not** (emphasis added) negligent.
>
> [ ]Appellants failed to convince the jury that [the] weight and sufficiency of the evidence showed that Mr. Leach was driving negligently. As explained above, multiple witnesses testified the bus stopped at the light before turning and that Mr. Leach used his left turn signal. Mr. Leach also testified that he did not see any oncoming vehicles before turning left. Further, there was evidence by three eyewitnesses, one of whom was standing on a nearby corner, that Ms. Fisher's car did not slow down or in any way try to avoid the bus. Moreover, no testimony was given by Ms. Fisher that the events leading to the accident occurred in any other way since she was unable to testify as to the details of the accident.

(Trial Court Opinion at 8–9) (internal quotation marks and citations to the record omitted). We accept this analysis. Based upon the foregoing, we conclude the trial court properly admitted Ms. Winfrey's testimony regarding the speed of the Fisher vehicle. *See Moroney, supra.* As such, Appellants are not entitled to a new trial. Accordingly, we affirm.

¶ 14 Judgment affirmed.