J-A06018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BETTY L. SHIFLETT AND CURTIS SHIFLETT, HUSBAND AND WIFE | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | : : | |
| v. | : : | |
| LEHIGH VALLEY HEALTH NETWORK, INC.; AND LEHIGH VALLEY HOSPITAL | : : : : | |
| Appellants | : | No. 2293 EDA 2016 |

Appeal from the Judgment Entered July 18, 2016
In the Court of Common Pleas of Lehigh County
Civil Division at No(s):  No. 2014-C-0388

BEFORE:   STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                          **FILED MAY 26, 2020**

Appellants, Lehigh Valley Health Network, Inc., and Lehigh Valley Hospital (collectively, "the Hospital"), are before us upon remand from the Pennsylvania Supreme Court, with regard to their appeal from the judgment entered in the Lehigh County Court of Common Pleas against the Hospital and in favor of Appellees, Betty L. Shiflett and Curtis Shiflett, husband and wife, in this medical malpractice action.  We affirm.

In its opinion, our Supreme Court set forth the relevant facts and some of the procedural history of this case, in part, as follows:

> Betty Shiflett…underwent knee surgery at Lehigh Valley Hospital…on April 12, 2012.  While recovering in the hospital's post-surgical unit ("PSU"), [Mrs. Shiflett] fell out

_____

[*] Former Justice specially assigned to the Superior Court.

of bed. Three days after surgery she was transferred to the transitional skills unit ("TSU") for occupational and physical therapy. Shortly after her transfer to the TSU, [Mrs. Shiflett] experienced pain and a clicking sound in her knee. [Mrs. Shiflett] reported these symptoms to nurse Kristina Michels Mahler ("Nurse Mahler"), but Nurse Mahler did not report these complaints to the treating doctor. On April 19, 2012, a physical therapist informed doctors of [Mrs. Shiflett]'s complaints about her knee. The doctors determined that [Mrs. Shiflett] had suffered an avulsion fracture of her left tibial tuberosity. [Mrs. Shiflett] then endured two additional surgeries in an attempt to fix her knee, both of which were unsuccessful. [Mrs. Shiflett] has been left with no extensor mechanism in her leg, suffers from chronic pain, and is confined to a wheelchair.

In February 2014, the Shifletts filed a complaint in which they asserted a claim for negligence in connection with [Mrs. Shiflett]'s fall in the PSU as well as a claim of loss of consortium. Therein, the Shifletts alleged that the Hospital's employees were negligent in failing to provide adequate fall protection for [Mrs. Shiflett] in the PSU and that the Hospital failed to oversee adequately its professional staff. According to the Shifletts, but for this negligence, [Mrs. Shiflett] would not have suffered the avulsion fracture and permanent disability. The Hospital filed preliminary objections, complaining that the averments were too vague, general and overbroad to discern the nature of the alleged misconduct at issue. In response, the Shifletts filed an amended complaint, refining their allegations to specify that they were asserting claims against the Hospital for both vicarious liability and corporate liability with respect to the negligence associated with the events that occurred in the PSU. The Hospital again objected on the basis that the averments were impermissibly overbroad and vague, …but the trial court did not agree. It overruled the preliminary objections and the case proceeded toward trial.

More than a year later (and more than three years after the events in the Hospital), the Shifletts sought leave to amend their complaint for a second time in light of evidence revealed during discovery. In the proposed amended complaint, the Shifletts sought to add allegations of

- 2 -

negligence regarding Nurse Mahler's conduct in the TSU. Specifically, they sought to include allegations that because of Nurse Mahler's failure to report [Mrs. Shiflett]'s complaints to the doctors, [Mrs. Shiflett] received multiple rounds of physical therapy that increased the risk of additional injury to her knee and the need for surgery. The Hospital opposed the motion, arguing that the proposed amended complaint added a new cause of action that was barred by Pennsylvania's two-year statute of limitations for negligence claims. The learned trial court disagreed and allowed the amendment.

*Shiflett v. Lehigh Valley Health Network, Inc.*, ___ Pa. ___, ___, 217 A.3d 225, 226-27 (2019) ("*Shiflett II*") (internal citations omitted).

On January 19, 2016, the Shifletts filed motions *in limine* seeking, *inter alia*, to preclude the Hospital from introducing evidence at trial regarding Mrs. Shiflett's adult son's convictions for sexual offenses in early 2012. Following a hearing, the trial court granted the Shifletts' request on February 2, 2016, and precluded the Hospital from presenting details about Mrs. Shiflett's son's criminal history and the nature of his offenses. The court, however, permitted the Hospital to inquire generally about Mrs. Shiflett's son's "legal problems" as an alternative explanation for or cause of her depression, which the Shifletts claimed she suffered as a result of the Hospital's alleged negligence.

At trial,

[Mrs. Shiflett] testified that she is now permanently disabled and suffers from depression as a result. She indicated that she is embarrassed, as her husband has to care for her, including dressing and bathing her. She has pain "[a]ll the time" and cannot even ride very far as a passenger in an automobile because travelling causes her too much pain. The Shifletts' life care planner expert, Nadene Taniguchi, testified about the Shifletts' damages, including [Mrs.

Shiflett's] future medical costs.

*Id.* at \_\_\_, 217 A.3d at 229 (internal citations to record omitted).

Additionally, during trial the parties presented to the jury the videotaped deposition testimony of Dr. Robert Mauthe, an independent medical examiner who evaluated Mrs. Shiflett and reviewed her medical history. (*See* N.T. Trial, 2/5/16, at 210.) During Dr. Mauthe's testimony, the following exchange occurred between Dr. Mauthe and the Hospital's counsel:

> [COUNSEL]: Now, did [Mrs.] Shiflett discuss with you at all whether she is currently depressed?
>
> [DR. MAUTHE]: You know, I was asked to address that issue. It was uncomfortable. But I was asked to do it.
>
> And so, I waited until the very end until [the Shifletts] were just about to leave. … And so I brought it up. And [Mrs. Shiflett] said yes, I am depressed. And then I had to ask her about this other issue—
>
> \* \* \*
>
> [COUNSEL]: Doctor, can you tell us what [Mrs.] Shiflett shared with you with regard to her depression, when you questioned her on that issue?
>
> [DR. MAUTHE]: There obviously is an issue regarding her depression. Someone who has had a functional decline, as she has, would understandably be depressed.
>
> Someone who has been exposed to an environment in which there are issues having to do with her son. And those issues are—can also be depressing. And so I very simply was very polite. I asked [Mrs.] Shiflett if they were both contributing, and she said yes.

(N.T. Dr. Mauthe Deposition Testimony, 1/20/16, at 38, 41).

Subsequently:

> On February 8, 2016, the day before the case was submitted to the jury, the trial court met with counsel to confirm that the Shifletts' claim for corporate negligence related to the Hospital's alleged failure to train the nurse (Nurse Langham) on duty at the time of [Mrs. Shiflett's] fall in the PSU. Counsel for the Shifletts confirmed this representation, indicating that the Shifletts were presenting three claims of negligence: two for vicarious liability (relating to the negligence of Nurse Langham in the PSU and of Nurse Mahler in the TSU), and a claim of corporate liability relating to [Mrs. Shiflett's] fall in the PSU. …

***Shiflett II, supra*** at \_\_\_, 217 A.3d at 229 (internal footnote omitted). The parties agreed upon a general jury verdict sheet that did not require the jury to allocate distinct damages awards per each claim for which it found the Hospital negligent and liable.

On February 9, 2016, the jury rendered a verdict in favor of the Shifletts and against the Hospital. Specifically, the jury found: (1) Nurse Langham (the nurse in the PSU where Mrs. Shiflett fell) was not negligent; (2) Nurse Michels Mahler (the TSU nurse who failed to report promptly Mrs. Shiflett's post-operative pain) was negligent and her negligence was a factual cause of harm to Mrs. Shiflett's injuries; (3) the Hospital was vicariously liable for Nurse Mahler's conduct; and (4) the Hospital was negligent, based upon a theory of corporate negligence, for failing to train employees and enforce fall prevention policies, and the Hospital's negligence was a factual cause of harm to Mrs. Shiflett's injuries. The jury awarded the Shifletts a general damages award in the amount of $2,391,620.00. Per the mutually agreed-upon verdict sheet, the jury did not allocate discrete amounts of damages to specific claims. On

February 18, 2016, the Shifletts filed a timely motion for delay damages. The court subsequently granted their motion and entered a molded verdict against the Hospital in the amount of $2,432,511.17.

The procedural history of this case continued as follows:

> [On February 18, 2016, the Hospital timely] filed a post-trial motion requesting judgment notwithstanding the verdict, a new trial, or *remittitur*. The Hospital did not challenge the unallocated nature of the damages award, but reiterated [the] claim that the second amendment of the complaint (regarding negligence in the TSU) was improper because it allowed a time-barred claim to be submitted to the jury. The trial court denied the post-trial motion. Following the entry of judgment, the Hospital appealed.
>
> On appeal, the Superior Court ruled that the trial court should not have allowed the second amendment to the Shifletts' complaint. ***Shiflett v. Lehigh Valley Health Network, Inc.***, 174 A.3d 1066, 1086 (Pa.Super. 2017) [("***Shiflett I***")]. The intermediate appellate court noted that the time frame and cast of actors alleged in connection with the PSU were different from those alleged in connection with the TSU claims, and thus held that the TSU claims were time-barred and that the trial court erred by allowing the Shifletts to add them to their complaint and present them to the jury at trial. ***Id.*** at 1087-88.
>
> Having reached this conclusion, the Superior Court turned to the question of whether the case would have to be remanded to the trial court. It explained that because the verdict sheet did not itemize the award of damages by claim, it was impossible to know whether some of the award was attributable to the finding of negligence on the time-barred TSU claim. ***Id.*** at 1092. Because the allocation was unclear from the verdict sheet and the Shifletts were not entitled to recover on the time-barred TSU claim, the Superior Court concluded that a new trial limited to damages was required. ***Id.***

***Shiflett II, supra*** at ___, 217 A.3d at 231-32 (internal citations to record

- 6 -

and footnotes omitted). Additionally, this Court determined the Hospital's appellate issues related to the scope of the Shifletts' liability expert's testimony and inconsistent verdict claim merited no relief. *Shiflett I, supra* at 1089-92. This Court declined to address the Hospital's remaining appellate claims, because they pertained to the amount of the jury's damages award.[1]

The Shifletts timely filed a petition for allowance of appeal to the Pennsylvania Supreme Court. Our Supreme Court denied in part and granted in part their petition to consider only one issue:

> Did the Superior Court panel overlook or misapprehend th[e Supreme] Court's precedent establishing that if a party does not request a special interrogatory on the verdict sheet allocating damages between causes, it has waived any objection to a general damage verdict?

*Shiflett v. Lehigh Valley Health Network, Inc.*, 648 Pa. 13, 191 A.3d 745 (2018). On September 26, 2019, the Supreme Court reversed this Court's grant of a new trial on damages, holding the Hospital had "waived any entitlement to a new trial on damages when [it] failed to request a special interrogatory on the verdict sheet that would have permitted the jury to allocate the damages awarded on each claim." *Id.* at ____, 217 A.3d at 226. In doing so, the Supreme Court recognized the "possibility that the Shifletts have obtained an award that may include damages awarded on a time-barred

---

[1] Of the seven issues the Hospital had raised on appeal in *Shiflett I*, this Court addressed the Hospital's first, second, fifth, and seventh issues. This Court declined to examine the Hospital's third, fourth, and sixth appellate claims.

theory of liability that should not have been submitted to the jury. The record demonstrates, however, that the Hospital was acutely aware of this possibility throughout the course of the trial, yet failed to request a special interrogatory that could have prevented this eventuality." *Id.* at ___, 217 A.3d at 237. Thus, the Supreme Court remanded the case to this Court to consider the Hospital's outstanding appellate claims, left unaddressed by this Court in *Shiflett I*. *Id.*

The Hospital has three remaining issues for our consideration:[2]

> [ISSUE 3:] WHETHER THE TRIAL COURT ERRED IN PRECLUDING EVIDENCE OF THE CRIMINAL HISTORY OF MRS. SHIFLETT'S SON SINCE SUCH EVIDENCE DIRECTLY AFFECTED THE LEVEL OF DAMAGES SHE ATTRIBUTED TO [THE HOSPITAL'S] ALLEGED ACTS OF NEGLIGENCE AND SUCH EVIDENCE WAS DIRECTLY RELEVANT TO HER CREDIBILITY?
>
> [ISSUE 4:] WHETHER THE TRIAL COURT ERRED IN PERMITTING THE SHIFLETTS' LIFE CARE PLANNER EXPERT TO TESTIFY ON FUTURE MEDICAL EXPENSES WHICH WERE NOT REDUCED TO PRESENT VALUE?
>
> [ISSUE 6:] WHETHER THE TRIAL COURT ERRED IN DENYING *REMITTITUR* WHERE THE JURY'S AWARD FOR FUTURE MEDICAL EXPENSES WAS NOT SUPPORTED BY THE EVIDENCE AND THE AWARD SUBSTANTIALLY DEVIATED FROM WHAT CAN BE CONSIDERED REASONABLE COMPENSATION?

(The Hospital's Brief at 6-7).

When considering a challenge to the denial of a new trial:

---

[2] The Hospital did not file a new brief upon remand, so we will discuss the outstanding issues in the order they were presented in *Shiflett I*.

> Our review of the trial court's denial of a new trial is limited to determining whether the trial court acted capriciously, abused its discretion, or committed an error of law that controlled the outcome of the case. In making this determination, we must consider whether, viewing the evidence in the light most favorable to the verdict winner, a new trial would produce a different verdict. Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed.

*J.W.S. Delavau, Inc. v. Eastern America Transport & Warehousing, Inc.*, 810 A.2d 672, 680 (Pa.Super. 2002), *appeal denied*, 573 Pa. 704, 827 A.2d 430 (2003). A new trial is granted only where the verdict is so contrary to the evidence as to shock one's sense of justice, not where the evidence is conflicting or where the court might have reached a different conclusion on the same facts. *Lombardo v. DeLeon*, 828 A.2d 372, 374 (Pa.Super. 2003), *appeal denied*, 579 Pa. 704, 857 A.2d 679 (2004).

In the Hospital's third issue, it argues the trial court improperly prohibited it from introducing at trial the details of Mrs. Shiflett's son's conviction. The Hospital contends the specific nature of her son's conviction and sentence were probative and relevant to Mrs. Shiflett's purported emotional suffering. The Hospital maintains Mrs. Shiflett's son's conviction, which stemmed from his sexual abuse of his minor daughter, contributed to Mrs. Shiflett's depression. The Hospital avers it sought to cross-examine Mrs. Shiflett about the effect her son's conviction had on her mental health to challenge the Shifletts' claim that Mrs. Shiflett suffered from depression as a result of her physical injuries. The Hospital asserts it should have been able

to cross-examine Mrs. Shiflett on her testimony that she did not recall telling independent medical examiner, Dr. Mauthe, her son's conviction was a cause of her depression. The Hospital suggests the court erroneously precluded it from introducing Dr. Mauthe's testimony about Mrs. Shiflett's statement during the independent medical exam about her son's conviction. The Hospital insists the phrase the trial court permitted it to use when discussing Mrs. Shiflett's son's conviction, "legal problems," was overly vague and prohibited the Hospital from demonstrating the gravity of her son's conviction. The Hospital concludes the trial court's evidentiary ruling was erroneous and this Court should reverse and remand for a new trial. We disagree.

"[W]hether evidence is admissible is a determination that rests within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the court clearly abused its discretion." **Fisher v. Central Cab Co.**, 945 A.2d 215, 218 (Pa.Super. 2008).

> The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

**Schmalz v. Manufacturers & Traders Trust Co.**, 67 A.3d 800, 802-03 (Pa.Super. 2013).

> Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden.

>> When the court has come to a conclusion by the exercise of its discretion, the party complaining of it on appeal has a heavy burden; it is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. …

>> \*   \*   \*

> We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness….

***Paden v. Baker Concrete Const., Inc.***, 540 Pa. 409, 412, 658 A.2d 341, 343 (1995) (internal citations and quotation marks omitted).  "[A] trial court has broad discretion with regard to the admissibility of evidence, and is not required to exclude all evidence that may be detrimental to a party's case." ***Schuenemann v. Dreemz, LLC***, 34 A.3d 94, 102 (Pa.Super. 2011).  "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or [unduly] prejudicial to the complaining party." ***Ettinger v. Triangle-Pacific Corp.***, 799 A.2d 95, 110 (Pa.Super. 2002), *appeal denied*, 572 Pa. 742, 815 A.2d 1042 (2003).

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.  Pa.R.E. 401.

Generally, all relevant evidence is admissible. Pa.R.E. 402. Rule 403, however, limits the admission of relevant evidence in the following manner:

### Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons

The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

*Comment*: Pa.R.E. 403 differs from F.R.E. 403. The Federal Rule provides that relevant evidence may be excluded if its probative value is "substantially outweighed." Pa.R.E. 403 eliminates the word "substantially" to conform the text of the rule more closely to Pennsylvania law. ***See Commonwealth v. Boyle***, 498 Pa. 486, 447 A.2d 250 (1982).

"Unfair prejudice" means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially.

Pa.R.E. 403. In conducting this balancing test, the question is whether the provocative or potentially misleading nature of the challenged evidence outweighs its probative value. ***Mahan v. Am-Gard, Inc.***, 841 A.2d 1052, 1057 (Pa.Super. 2003), *appeal denied*, 579 Pa. 712, 858 A.2d 110 (2004). Generally, for purposes of this test, "prejudice means an undue tendency to suggest a decision on an improper basis. The erroneous admission of harmful or prejudicial evidence constitutes reversible error." ***Braun v. Target Corp.***, 983 A.2d 752, 760 (Pa.Super. 2009), *appeal denied*, 604 Pa. 701, 987 A.2d 158 (2009). ***See also Smith v. Morrison***, 47 A.3d 131, 137 (Pa.Super. 2012), *appeal denied*, 618 Pa. 690, 57 A.3d 71 (2012) (reiterating: "'Unfair

prejudice' supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially").

Instantly, the trial court addressed this issue as follows:

> [The Hospital] wished to rebut Mrs. Shiflett's testimony on her emotional suffering and humiliation. Mrs. Shiflett testified she is unable to walk independently, climb stairs, drive, travel, socialize and play cards, swim, shower, or dress herself from the waist down because of her knee. Mrs. Shiflett testified that she feels like there is nothing left to live for because she is not able to do anything.
>
> [The Hospital] intended on rebutting Mrs. Shiflett's testimony regarding the reason for her depression with information relating to her son's criminal history. Specifically, [her son] pled guilty…to indecent assault with persons under 13 years of age and corruption of minors. [Her son]'s victim was his daughter. Mrs. Shiflett's granddaughters are no longer permitted to visit her home because [her son] lives with Mr. and Mrs. Shiflett.
>
> The inflammatory nature of [Mrs. Shiflett's son's] crime was such that after careful consideration, this court determined that the probative value of any evidence related to the crime was outweighed by the danger of unfair prejudice to Mrs. Shiflett. **See** Pa.R.E. 403. In an effort to balance the probative value against the danger of unfair prejudice, [the Hospital was] not foreclosed from inquiring about Mrs. Shiflett's emotional damage or the source of her depression. [The Hospital was] permitted to pursue such by referencing [Mrs. Shiflett's son's] "legal problems." The term was broad enough to allow for questions related to Mrs. Shiflett's inability to visit with her grandchildren while concealing the provocative nature of the crime. Such evidentiary decision was within this court's discretion, and we find that no error was made in precluding the evidence related to [Mrs. Shiflett's son's] criminal history.

(Trial Court Opinion, filed June 30, 2016, at 25) (internal citations to record

omitted). The record confirms the trial court conducted the requisite balancing test concerning the probative value of the nature and details of Mrs. Shiflett's son's conviction against its prejudicial effect. **See Fisher, supra**; Pa.R.E. 403. After deciding the prejudicial effect of admitting these details was greater than its probative value, the court still permitted the Hospital to ask about Mrs. Shiflett's son's "legal problems," in pursuit of its trial strategy to show the cause of Mrs. Shiflett's depression was multi-faceted. We see no reason to disrupt the court's evidentiary ruling. **See Paden, supra**; **Schmalz, supra**; **Fisher, supra**.

Additionally, to the extent the Hospital argues the trial court precluded it from introducing Dr. Mauthe's testimony regarding Mrs. Shiflett's statements to him about her son's conviction, the record belies this claim. The jury viewed the videotape of Dr. Mauthe's deposition testimony, during which Dr. Mauthe opined that Mrs. Shiflett's injuries and her son's legal trouble were likely both contributing factors to her depression. Thus, the trial court did not preclude the Hospital from presenting Dr. Mauthe's testimony regarding the degree to which Mrs. Shiflett's son's conviction affected her mental state. Therefore, the Hospital's evidentiary claim fails.

In the Hospital's fourth issue, it argues the Pennsylvania Medical Care Availability and Reduction of Error ("MCARE") Act, 40 P.S. §§ 1303.101-1303.910, requires reduction of future medical expenses awards to present value. The Hospital suggests two subsections of the MCARE Act, namely

subsections 1303.509(a)(2)(i) and 1303.509(b)(i), establish the mandate to decrease future medical expenses to present value. The Hospital insists the Shifletts' life care expert, Nadene Taniguchi, did not reduce the costs of Mrs. Shiflett's future medical care needs to present value. The Hospital contends the trial court impermissibly allowed Ms. Taniguchi's estimates and incorrectly told the jury to consider Ms. Taniguchi's testimony. The Hospital concludes this Court should reverse and remand for a new trial. We disagree.

"[T]he interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." *Wilson v. Transport Ins. Co.*, 889 A.2d 563, 570 (Pa.Super. 2005) (internal quotation marks omitted). "As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." *In re Wilson*, 879 A.2d 199, 214 (Pa.Super. 2005) (*en banc*). Further,

> [We] are constrained by the rules of statutory interpretation, particularly as found in the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501-1991. The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statute according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.

- 15 -

*Cimino v. Valley Family Medicine*, 912 A.2d 851, 853 (Pa.Super. 2006),

*appeal denied*, 591 Pa. 731, 921 A.2d 494 (2007).

The MCARE Act provides, in relevant part:

### § 1303.509.  Payment of damages

**(a)    General rule.**—In a medical professional liability action, the trier of fact shall make a determination with separate findings for each claimant specifying the amount of all of the following:

*    *    *

(2)    Future damages for:

(i)  medical and other related expenses by year;

(ii) loss of earnings or earning capacity in a lump sum; and

(iii)  noneconomic loss in a lump sum.

**(b)    Future damages.**—

(1)    Except as set forth in paragraph (8), future damages for medical and other related expenses shall be paid as periodic payments after payment of the proportionate share of counsel fees and costs based upon the present value of the future damages awarded pursuant to this subsection.  The trier of fact may vary the amount of periodic payments for future damages as set forth in subsection (a)(2)(i) from year to year for the expected life of the claimant to account for different annual expenditure requirements, including the immediate needs of the claimant.  The trier of fact shall also provide for purchase and replacement of medically necessary equipment in the years that expenditures will be required as may be necessary.

(2)    The trier of fact may incorporate into any future medical expense award adjustments to account for reasonably anticipated inflation and medical care

improvements as presented by competent evidence.

(3) Future damages as set forth in subsection (a)(2)(i) shall be paid in the years that the trier of fact finds they will accrue. Unless the court orders or approves a different schedule for payment, the annual amounts due must be paid in equal quarterly installments rounded to the nearest dollar. Each installment is due and payable on the first day of the month in which it accrues.

* * *

40 P.S. § 1303.509(a)(2), (b)(1)-(3).

This Court has previously rejected a claim of trial court error for failure to reduce the jury's future medical expense award to present value, under Section 509 of the MCARE Act, explaining:

Section 509 of the MCARE Act provides, in pertinent part, "future damages for medical and other related expenses shall be paid as periodic payments after payment of the proportionate share of counsel fees and costs based upon the present value of the future damages awarded pursuant to this subsection." 40 P.S. § 1303.509(b)(1).

Appellants rely on **Sayler v. Skutches**, 40 A.3d 135 (Pa.Super. 2012), *appeal denied*, 617 Pa. 640, 54 A.3d 349 (2012), which they maintain "required that future medical damages be reduced to present value pursuant to Section 509 of the MCARE Act." (Appellants' Brief, at 55 n.30). However, this reliance is misplaced. In **Sayler**, this Court concluded that, pursuant to the plain language of section 509(b)(1), the future medical damages award that had accrued at the time of the decedent's death should be reduced to present value only to determine the amount of **attorney's fees**. **See Sayler, supra** at 140. Therefore, the conclusion of the **Sayler** Court is completely inapposite to [Appellants'] position.

Further, we find that the law prior to the enactment of the MCARE Act reflects a long-settled policy that awards of

future medical expenses are not to be reduced to present value. For example, in **Yost v. West Penn Railways Co.**, 336 Pa. 407, 9 A.2d 368 (1939), the Pennsylvania Supreme Court unambiguously stated that,

Present worth does not apply to damages awarded for future pain, suffering and inconvenience. Nor does it apply to future medical attention. Future medical attention presupposes an out-of-pocket expenditure by the plaintiff. [The plaintiff] was entitled to have defendant presently place in her hands the money necessary to meet her future medical expenses, as estimated by the jury based upon the testimony heard, so that she will have it ready to lay out when the service is rendered. Damages for expected medical expenses and for future pain and suffering are entirely different from damages for loss of future earnings, which, of course, must be reduced to present worth.

**Yost v. West Penn Rys. Co.**, 336 Pa. 407, 9 A.2d 368, 369-70 (1939) (citation omitted); **see also Renner v. Sentle**, [30 A.2d 220 (Pa.Super. 1943)] (same).

Moreover, Appellants fail to produce any pertinent law to support an argument that the enactment of MCARE changed this policy. (**See** Appellants' Brief, at 54-56). Therefore, based on the Commonwealth's longstanding policy, and the language of the statute, we conclude that the trial court properly interpreted the language of section 509 of the MCARE Act to require that future medical expenses are only to be reduced to present value for the purpose of calculating attorney fees and costs. …

**Tillery v. Children's Hospital of Philadelphia**, 156 A.3d 1233, 1248-49

(Pa.Super. 2017), *appeal denied*, 643 Pa. 119, 172 A.3d 592 (2017).

Instantly, the Shifletts' life care expert, Ms. Taniguchi, did not reduce to

present value her estimates of Mrs. Shiflett's future medical expenses. The

Hospital's reading of the MCARE Act to require such a reduction, however, is

misplaced. Section 509 of the MCARE Act mandates reduction of future medical expenses to present value **only for the purpose of calculating attorneys' fees**. *See id.* Thus, the trial court correctly permitted Ms. Taniguchi to testify as to her estimates for Mrs. Shiflett's future medical expenses without decreasing them to present value, and correctly allowed the jury to consider Ms. Taniguchi's calculations. Consequently, the Hospital's fourth issue merits no relief.[3]

In its remaining issue, the Hospital argues the trial evidence did not support the jury award. The Hospital contends the jury award for Mrs. Shiflett's future medical expenses of $791,620.00 was excessive, unfair, and unreasonable compensation. The Hospital submits the jury's award surpassed by nearly $200,000.00 the Shifletts' life care expert's estimate of $601,056.00. The Hospital maintains the trial court erroneously denied its request for *remittitur*. The Hospital concludes it is entitled to *remittitur* or a new trial. We disagree.[4]

"The duty of assessing damages is within the province of the jury and,

_____

[3] The Shifletts made no demand for counsel fees and costs in their second amended complaint and the jury verdict included no such award, so there is no claim to reduce any such award to present value. (Second Amended Complaint, filed 7/2/2015; Jury Verdict, filed 2/10/16).

[4] To the extent the Hospital argues it is entitled to *remittitur* in part because the trial court barred the introduction of evidence regarding Mrs. Shiflett's son's conviction to challenge the Shifletts' noneconomic damages claim, that contention merits no relief for the reasons discussed above.

thus, as a general matter, a compensatory damage award should not be interfered with by the court unless it clearly appears that the amount awarded resulted from caprice, prejudice, partiality, corruption or some other improper influence." **Paves v. Corson**, 569 Pa. 171, 175, 801 A.2d 546, 548-49 (2002) (internal quotation marks omitted). "This standard incorporates the well-established requirement that a compensatory damage award must bear some reasonable relation to the loss suffered by the plaintiff as demonstrated by uncontroverted evidence at trial." **Id.** at 175, 801 A.2d at 549. **See also Rettger v. UPMC Shadyside**, 991 A.2d 915, 932 (Pa.Super. 2010), *appeal denied*, 609 Pa. 698, 15 A.3d 491 (2011) (explaining *remittitur* is appropriate only if jury award is excessive and exorbitant; "The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption").

> This [C]ourt will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. We begin with the premise that large verdicts are not necessarily excessive verdicts. Each case is unique and dependent on its own special circumstances and a court should apply only those factors which it finds to be relevant in determining whether or not the verdict is excessive.

**Tillery, supra** at 1246. The decision to grant or deny *remittitur* is within the trial court's sound discretion, and will be overturned only upon a showing of abuse of discretion or error of law. **Id.** We cannot substitute our judgment

for that of the fact-finder, and we must view the record with consideration of the evidence accepted by the jury. **Smalls v. Pittsburgh-Corning Corp.**, 843 A.2d 410, 414 (Pa.Super. 2004), *appeal denied*, 579 Pa. 704, 857 A.2d 680 (2012).

Instantly, the trial court disposed of the Hospital's *remittitur* demand as follows:

> [The Shifletts' life care] expert, Nadene Taniguchi, testified that her projection for medical surveillance (future doctor visits), as well as diagnostic costs, were based on the average needs of Mrs. Shiflett; she could require more or less of what was included in the projection. In addition, the projections were based on average life expectancy. Ms. Taniguchi also testified to her "modest" calculations for the cost of podiatrists, and the "very modest" amount set aside for x-rays, CAT scans, and laboratory studies.
>
> The jury's future medical expenses award was higher than the amount projected by Ms. Taniguchi. However, the award bears a reasonable resemblance to the damages proved and does not so shock one's sense of justice as to suggest inappropriate influence of any kind. The jury was instructed to fully and fairly compensate [Mrs. Shiflett] for all medical expenses they believed she would incur each year that they believed she would live. The verdict was not disproportionate to the evidence and was reasonable compared to the numbers presented at trial. This verdict was not excessive and does not warrant a new trial or *remittitur* by the court.

(Trial Court Opinion, filed June 30, 2016, at 28-29) (internal citations to record omitted). The record supports the trial court's rationale, and we see no reason to disturb it. **See Tillery, supra**. Therefore, the Hospital's sixth and final appellate issue following remand merits no relief. Accordingly, we affirm.

Judgment affirmed.

- 21 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/26/2020