2025 PA Super 191

| | | |
|---|---|---|
| RONALD LEWIS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| READING HOSPITAL, ROBERT Q. LUO, M.D., AND TOWER HEALTH MEDICAL GROUP | : | No. 986 MDA 2024 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered June 6, 2024
In the Court of Common Pleas of Berks County Civil Division at No(s):
22 13056

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

OPINION BY STABILE, J.:                    **FILED SEPTEMBER 02, 2025**

In this medical malpractice action, Reading Hospital, Robert Q. Luo, M.D., Tower Health Medical Group (defendants/Appellants) were found liable for the injuries sustained by Ronald Lewis (plaintiff/Appellee) after he underwent vascular surgery in 2021.  A jury found that Appellants had negligently deviated from the standard of care when providing post-operative treatment. Appellee was awarded $869,000 in damages.  Appellants now contend that the verdict must be vacated because the trial court erred in (1) excluding their expert witness on causation; (2) failing to grant a mistrial after Appellee's counsel told the jury that the defense was unable to retain an expert on causation; (3) allowing Appellee's expert witness to testify that he had once been retained in an unrelated case as an expert by Reading Hospital; and (4) giving an instruction and verdict form to the jury which equated the

negligence element of factual cause with an "increased risk of harm." Finding merit in Appellants' second and fourth claims, we vacate the order on review and remand the case for a new trial on those grounds.

On April 6, 2021, Appellee, at the age of 72, underwent open vascular surgery at Reading Hospital for the purpose of repairing abdominal aortic aneurisms. Dr. Luo performed the surgery, and soon after it was completed, Appellee reported severe pain, swelling, and discoloration in his left foot.

It would soon become evident that Appellee's post-surgery symptoms were due to a lack of blood flow (ischemia). One likely cause of that type of ischemic injury was the loosening of plaque (micro-emboli) from Appellee's diseased arteries during his vascular surgery.

Rather than treat the ischemic injury immediately after the manifestation of Appellee's symptoms, Dr. Luo opted to monitor him to better ascertain whether and to what extent tissue from his foot would have to be removed. Dr. Luo believed that there was no viable surgical or medicinal means of remedying the underlying ischemic injury. Appellee was only prescribed an antibiotic medication to address a possible bacterial infection resulting from an apparent burn on Appellee's left foot which was unrelated to the vascular surgery.[1]

Within three weeks of Appellee's surgery, his left foot developed gangrene and had to be amputated. Appellee filed a complaint on September

---

[1] Appellee disputed that he had a burn injury on his left foot at that time, arguing that Appellants had misdiagnosed the burn as a sign of ischemia.

6, 2022, alleging that Dr. Luo had been negligent in treating his post-surgery ischemic injury, resulting in the amputation. Reading Hospital and Tower Health Medical Group were alleged to be vicariously liable for Dr. Luo's negligence. Appellants timely filed an answer and new matter. Appellee then filed a reply to new matter.

One of the central trial issues was whether Appellants failed to treat Appellee in accordance with the applicable standard of medical care. Prior to trial, Appellants produced a report from their expert, Herrick Wun, M.D., a board-certified vascular surgeon. Dr. Wun obtained an undergraduate degree from Yale University; medical degrees from the New York University School of Medicine; and a professorship at the Weill Cornell Medical College, where he specialized in vascular medicine. He also worked as an attending physician at the Weill Cornell Medical Center and maintained an active clinical practice.

In his report, Dr. Wun opined that there was no surgical option for removing the clots in Appellee's arteries; he further opined that a blood thinning medication (anticoagulant) would not have prevented the need to amputate Appellee's foot:

> Anticoagulation is not without its risks and an endpoint is needed once started. There are no guidelines for anticoagulation when the source is atheroembolic disease. In fact, some studies have shown a worse outcome when anticoagulation is given for these situations. Moreover, anticoagulation was not appropriate here because of the risks of bleeding after this open procedure.

Expert Report of Herrick Wun, M.D., December 14, 2023, at 3.

The opinion of Dr. Wun differed from that of Appellee's expert, Timothy Wu, M.D., a vascular surgeon who opined in his own report that an anticoagulant should have been administered as soon as Appellee's symptoms manifested in his foot. *See* Expert Report of Timothy Wu, M.D., 10/25/2023, at 6.[2] Dr. Wu stated that the failure to give Appellee such medication breached the standard of care, increased the risk of harm, and played a role in causing the need for the foot's amputation. *See id*.

Appellee filed a motion *in limine* on February 23, 2024, to preclude Appellants' expert, Dr. Wun, from relying on the unidentified medical literature referred to in his report. On March 12, 2024, the trial court entered an order compelling Dr. Wun to name the studies he had relied upon.

Ten days later, on March 22, 2024, Dr. Wun submitted a supplemental report which failed to comply with the trial court's directive. He cited no studies which supported his opinion that anticoagulants may produce a "worse outcome." Supplemental Expert Report of Herrick Wun, M.D., 3/22/2024, at 1. Instead, Dr. Wun stated that no particular studies had "come to mind," and that it was nevertheless his opinion, "as well as [that of] other experts[,] that anticoagulation is not beneficial." *Id*.

---

[2] Appellants and Appellee each retained an expert in the field of hematology. Appellee produced a report by Samuel Berkman, M.D., who opined that an anticoagulant medication should have been given to Appellee; Appellants' hematology expert, Henry Rinder M.D., opined that an anticoagulant would not have improved Appellee's condition.

- 4 -

On March 27, 2024, Appellee again moved to limit Dr. Wun's testimony as a sanction for flouting the trial court's prior order. The trial court held a hearing on the motion, and on April 2, 2024, the trial court entered an order granting Appellee's motion *in limine* to preclude Dr. Wun from testifying in reliance on any medical studies. The trial court heard further argument from the parties on April 9, 2024, as to whether Dr. Wun would be precluded from testifying at all as an expert witness. The trial court then entered an order on that date precluding Dr. Wun from giving any expert opinions.

A few days after that latter order, Appellants moved for reconsideration, submitting a second supplemental expert report by Dr. Wun, dated April 11, 2024. Disavowing the previously referenced, but unnamed, medical studies and opinions of other experts, Dr. Wun stated that he was relying only on his own "education, training, and clinical experience":

> It is my opinion, based on my education, training, and clinical experience as a vascular surgeon and upon review of the medical records, documents provided, and facts in this case that anticoagulation is not appropriate or beneficial in situations like Mr. Lewis'. **I reached this opinion without relying on opinions of any other experts or any specific medical studies. These opinions are rendered to a reasonable degree of medical certainty**.

Memorandum of Law in Support of Motion for Reconsideration of the April 2 and 9, 2024 Orders Preluding Expert Testimony by Dr. Wun, 4/12/2024, at Exhibit D (emphasis added).

On the first day of trial, April 17, 2024, the trial court indicated that it had not read the final report of Dr. Wun, but nevertheless stressed that "[t]he

error remains uncured[.]" N.T. Trial, 4/17/2024, at 25. When trial began, Appellee seemed to suggest to the jury in the opening statement that Appellants had no expert on vascular surgery because they could not find one who thought that Dr. Luo had abided by the applicable standard of care:

> [O]ver the next couple days, it's basically going to be a parade of MD's walking in here and telling you about the body's vascular system. You're going to hear from a vascular surgeon expert that we're going to call . . . . **You're going to hear from the defendant [Dr. Luo] who is a vascular surgeon. And there are, other than those two, 3,127 other vascular surgeons in the United States. At least that's what Google has told me.** *3,129 minus these two. You are not going to hear from a single vascular surgeon expert —*

N.T. Trial, 4/17/2024, at 219-20 (emphasis added).

Appellants' counsel objected and moved for a mistrial or, alternatively, a curative instruction. *Id.*, at 220. The trial court called a side-bar and asked Appellants' counsel what form of relief was being sought; counsel clarified that the comments referring to the lack of an expert were so prejudicial as to warrant a mistrial. *See id*. Counsel then stated, "if Your Honor is not going to grant a mistrial, I believe there has to be a curative instruction." *Id.*, at 221.

After confirming that Appellee's comments related to the preclusion of Dr. Wun's testimony, the trial court stated, "I think there's a problem with this Court precluding an expert on the basis of [Appellee's] motion and then because the motion is granted you take advantage of that in front of the jury. That's a problem." *Id.*, at 222.

The trial court then denied Appellants' motion for a mistrial, but agreed to give a general cautionary instruction to the jury that the statements of counsel are not evidence. *Id*., at 224. Further, the trial court advised that more research on the issue was needed to determine if that relief was sufficient: "[D]epending on what I find, I may have to give a more stringent cautionary instruction or I may have to grant [defense counsel] leave to renew his motion for a mistrial." *Id*., at 224-25.

Prior to Appellants' opening statement the next day, the trial court repeated the cautionary instructions given earlier:

> Members of the jury, I want to take this moment just to remind you as I told you yesterday will happen, that I'm often repeating things. I'm reminding you that statements of counsel, opening statements, closing arguments from both sides are not evidence in the case. Okay. The evidence is what you hear from the witness stand[.]
>
> * * * *
>
> Again, at this moment, the most important thing for you to remember is that the statements of counsel are not evidence. What they are is what they anticipate the case is going to look like.

*Id*., at 238-39.

After opening statements had concluded, the trial court ordered a brief recess to research the issue, after which Appellants renewed their motion for a mistrial. *See id*., at 257. Citing *Siegal v. Stefanyszyn*, 718 A.2d 1274 (Pa. Super. 1998), Appellants argued that a cautionary instruction, even one more thorough and strongly worded than the one already provided by the trial

court, was insufficient to cure the prejudice of an improper remark about the lack of an expert opinion witness. *See id*., at 257-58.

The trial court denied Appellants' renewed motion because it did "not believe that anything has occurred up to this moment that results in manifest injustice requiring . . . granting of a mistrial[.]" *Id*., at 265. The trial court also reasoned that ***Siegal*** was factually and procedurally distinguishable, and that the prejudice caused by counsel's comment was adequately resolved by the cautionary instruction, which Appellants did not object to. *Id*.; *see also* Trial Court 1925(a) Opinion, at 23-25.

Once the trial commenced, Appellee presented his evidence, including the testimony of its expert in vascular surgery, Dr. Wu. On direct examination, when stating his qualifications, Dr. Wu was questioned about past cases in which he participated as an expert witness. He explained that he had testified on behalf of both plaintiffs and defendants in malpractice actions. In fact, he had previously testified as an expert witness for Appellant, Reading Hospital, in an unrelated case. Appellants objected that it was improper for Dr. Wu to discuss his prior work for Reading Hospital because it would be irrelevant, and confusing to the jury. *See id*., at 627-28.

The objection was overruled. The trial court found that Dr. Wu's past testimony for Reading Hospital was relevant to his qualifications as an expert and to establish his lack of bias. The trial court also found that disclosing to the jury Dr. Wu's experience as an expert witness for Reading Hospital would not be prejudicial to Appellants. *See id*., at 628. Dr. Wu went on to opine

that Appellants were negligent in delaying certain treatments to Appellee, increasing the risk that he would suffer medical complications from vascular surgery, and ultimately causing the conditions that necessitated the amputation of his foot.

Later, in closing argument, Appellee's counsel focused on the second question on the verdict form pertaining to the causal element in negligence that advised the jury that Appellants could be held liable as long as their negligent conduct increased the risk of harm to Appellee:

> So the second question you're going to see on the verdict sheet is what we call cause. So we have to prove to you did the defendant increase the risk of harm to Mr. Lewis and an easier or another way I think about it when I'm talking about it is did he decrease the chance that Mr. Lewis would have his foot? And I think he absolutely did.
>
> **And the reason that there's this increased risk of harm test that says hey, if there is any significant possibility of avoiding this injury and the defendant didn't do something about it, then you have to check yes, 10 out of 12 of you have to check yes on that second question**.

N.T. Trial, 4/23/2024, at 834 (emphasis added).

The description of the causation element of negligence by Appellee is notable here because, prior to trial, portions of the jury instructions and verdict form concerning that element had been hotly disputed. As to causation, Appellants filed proposed points for charge and a verdict form that materially differed from those that the jury received. *See* Appellants'

Proposed Points for Charge, 4/8/2024, at 1-2; Appellants' Proposed Jury Verdict Form, 4/8/2024, at 1-2.[3]

As to the "factual cause" element of negligence in a medical malpractice case, Appellants proposed the Pennsylvania Suggested Standard Jury Instruction (Pa. SSJI) 14.20 (Civil), which described the element of causation in part (A) as conduct by the defendants which was a "factual cause in bringing about harm." Part (B) of this proposed instruction reads in relevant part that "[w]here the plaintiff presents expert testimony that the failure to act or delay on the part of the physician has increased risk of harm to plaintiff, this testimony, if found credible, provides sufficient basis from which you may find that the negligence was a factual cause of the injuries sustained." Pa. SSJI 14.20 (Civ).

During the charge conference, the trial court declined to adopt the points for charge on the causation (factual cause) element proposed by Appellants. The trial court instead modified the instruction to allow the jury to find factual cause by determining that Appellants increased Appellee's risk of harm. **See** N.T. Trial, 4/23/2024, at 776-77. Specifically, the trial court's charge repeatedly instructed that Appellants were liable if the jury found that their negligent conduct resulted in actual harm to Appellee **or** an increased risk of

_____

[3] Appellee had also proposed Pa. SSJI 14.20 (Civ.). **See** Plaintiff's Proposed Points for Charge, 4/9/2024, at para. 19; Plaintiff's Updated Proposed Points for Charge, 4/21/2024, at p. 21. At some point during off-record proceedings, Appellee requested the factual cause instruction to be modified to include references to an "increased risk of harm."

harm.  Appellants objected to the "addition of increased risk to the factual cause discussions" on the record after the charge conference, and the objection was overruled.  ***Id***., at 775-76.

At the conclusion of the trial, when instructing the jury on the element of causation, the trial court advised the jury in relevant part as follows:

> When a medical professional negligently fails to act or negligently delays in taking indicated diagnostic or therapeutic steps and their ***negligence is a factual cause of an increased risk of harm to the plaintiff, that negligent medical professional is responsible for the increased risk of harm.***
>
> ***Where the plaintiff presents expert testimony that the failure to act or delay on the part of a medical professional has increased the risk of harm to the plaintiff, this testimony, if found to be credible, provides a sufficient basis for which you may find that the negligence was a factual cause of the harm or the increased risk of harm sustained***.
>
> * * * *
>
> In order for the plaintiff to recover in this case, the defendants' negligent conduct must have been a factual cause in bringing about harm ***or an increased risk of harm***.
>
> ***Conduct is a factual cause of harm or an increased risk of harm when the harm or increased risk of harm would not have occurred absent the conduct***.
>
> To be a factual cause, the conduct must have been an actual, real factor in causing the harm ***or the increased risk of harm even if the result is unusual or unexpected***.
>
> * * * *
>
> ***Even though prior conditions or concurrent causes may have contributed to the harm or an increased risk of harm, <u>if the defendants' negligence factually caused harm or an</u>***

***increased risk of harm, the defendants are liable for the full amount of damages sustained***[.]

***Id***., at 860-61 (emphasis added).

Along the same lines as their dispute over the element of factual cause in the jury instructions, the parties differed in how the issue should be presented in the verdict form. Appellants submitted a proposed verdict form mirroring section 14.160 of the Pennsylvania Suggested Standard Jury Instructions (Civil), which asked whether "the negligence of [Appellants was] a factual cause of the harm to Plaintiff Roland Lewis?"[4]

Conversely, Appellee submitted a proposed verdict form that omitted any reference to factual cause, instead proposing the question, "Did the negligence of Defendant Dr. Luo increase the risk of harm to Ronald Lewis?" Appellants filed a written objection to that question, asserting that the trial court should use the format in the Standard Instructions which referred to factual cause. ***See*** Objections of Defendants to the Proposed Jury Verdict Form of Plaintiff, 4/15/2024, at para. 2.

During the charge conference, a discussion about the verdict form was held off the record. When the proceedings went on record, Appellants' counsel verbally objected to the language in Appellee's proposed verdict form:

_____

[4] This was consistent with the recommended verdict form contained in Pennsylvania's Suggested Standard Jury Instructions (Civil), which include the following question on causation: "Was the negligence of those defendants you have found to be negligent a factual cause of any harm to the plaintiff?" Pa. SSJI (Civ) § 14.160, Medical Malpractice — Suggested Special Jury Interrogatories.

> Just out of an abundance of caution to ensure that this is on the record, we object to the language of increased risk on the verdict form Number 2 when it talks about cause. We believe that's included in the factual cause.

N.T. Trial, 4/23/2024, at 781. Appellants' objection was overruled, and consistent with the jury charge on the element of causation, Question 2 of the verdict form asked:

> Was the negligence of those Defendants you have found to be negligent, a cause of harm or an increased risk of harm to the Plaintiff?

Verdict Form, 4/28/2024, at 1. Ultimately, the jury entered a verdict finding Appellants negligent, and liable for Appellee's damages due to their negligence being "a cause of harm **or** an increased risk of harm[.]" **Id.** (Emphasis added).

Appellants filed a post-trial motion in which they sought a new trial. They asserted that the trial court reversibly erred in precluding Dr. Luo from testifying; allowing Appellee to mislead the jury about the reason for its lack of an expert in vascular surgery; and allowing Appellants to be found liable without a determination that their negligent conduct was a factual cause of Appellee's injuries. The motion was denied, and Appellants timely appealed. Both Appellants and the trial court complied with Pa.R.A.P. 1925. **See** Trial Court 1925(a) Opinion, 8/6/2024, at 5-37 (giving reasons why order on review should be affirmed). In their brief, Appellants now assert four issues for our consideration:

1. Whether the Trial Court erred by precluding [Appellants'] liability expert, Dr. Wun, from testifying at trial and denying [Appellants'] post-trial motion for a new trial on that basis[.]

2. Whether the Trial Court erred by declining to grant a mistrial and/or failing to provide an appropriate curative instruction after [Appellee's] improper suggestion that [Appellants were] unable to retain a vascular surgeon expert witness and denying [Appellants'] post-trial motion for a new trial on that basis[.]

3. Whether the Trial Court erred by permitting [Appellee's] expert to reference at trial his prior retention and testimony in a case involving Reading Hospital and denying [Appellants'] post-trial motion for a new trial on that basis[.]

4. Whether the Trial Court erred by incorrectly charging the jury on causation and incorrectly constituting the verdict slip on causation by including confusing and legally incorrect references to increased risk of harm and denying [Appellants'] post-trial motion for a new trial on that basis[.]

Appellants' Brief, at 3 (issues numbered and reordered, answers omitted).

Appellants' first claim concerns whether the trial court erroneously excluded their witness, Dr. Wun, from taking the stand as an expert on vascular surgery.

We review a trial court's evidentiary decisions for an abuse of discretion. *See Schmalz v. Mfrs. and Traders Trust Co.,* 67 A.3d 800, 802–03 (Pa. Super. 2013); *see also Smith v. Paoli Mem'l Hosp.,* 885 A.2d 1012, 1016 (Pa. Super. 2005) ("Decisions regarding the admission of expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court.").

In this context, "[d]iscretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is

- 14 -

manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." **Schmalz**, 67 A.3d at 803 (quoting **Catlin v. Hamburg**, 56 A.3d 914, 922 (Pa. Super. 2012)).

The purpose of our rules governing the discovery of expert testimony is to prevent unfair surprise. **See Miller v. Brass Rail Tavern, Inc.**, 664 A.2d 525, 530 n.3 (Pa. Super. 1995). Pennsylvania Rule of Civil Procedure 4003.5 provides in relevant part:

(1) A party may through interrogatories require

* * * *

(1)(b) the other party to have each expert so identified state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his or her answer a report of the expert or have the interrogatories answered by the expert. The answer or separate report shall be signed by the expert.

Pa.R.Civ.P. 4003.5(a)(1)(b).

Compliance with the above rule requires a party to submit a summary report of an expert's testimony upon request. **See id**. An expert's report is sufficient as long as it enables the opposing party to respond. **See Feden v. Consol. Rail Corp.**, 746 A.2d 1158, 1163 (Pa. Super. 2000); **Kaminski v. Emp'rs Mut. Cas. Co.**, 487 A.2d 1340, 1344 (Pa. Super. 1985) ("By allowing for early identity of expert witnesses and their conclusions, the opposing side can prepare to respond appropriately[.]"). An expert is permitted to provide

a reasonable explanation, or an enlargement of the report, if the expert's subsequent testimony remains within the report's scope. **See Hickman v. Fruehauf Corp.,** 563 A.2d 155 (Pa. Super. 1989).

An expert may not testify "as a mere conduit or transmitter of the content of an extrajudicial source." **Sheely v. Beard**, 696 A.2d 214, 218 (Pa. Super. 1997). Under Pennsylvania Rule of Evidence 705, "[i]f an expert states an opinion the expert must state the facts or data on which the opinion is based." Pa.R.E. 705. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Pa.R.E. 703.

The usual test for qualifying a witness to testify as an expert is whether the witness has a "reasonable pretension to specialized knowledge on the subject under investigation." **Miller v. Brass Rail Tavern, Inc.**, 664 A.2d 525, 528 (Pa. 1995). "An expert opinion may be based on inadmissible facts or facts not in evidence, including other expert opinions and hearsay statements, as long as such facts are of a type reasonably relied on by experts in that profession used to form an opinion." **Carletti v Commonwealth Dept. of Trans.**, 190 A. 3d 766, 778 (Pa. Cmwlth. 2018); **see also** Pa.R.E. 703 (same). The proper method for testing the bases of an expert's opinion is *voir dire* and cross-examination. **See Primavera v. Celotex Corp.**, 608 A.2d 515, 520 (Pa. Super. 1992); **see also Mitchell v. Shikora**, 209 A.3d 307, 319 (Pa. 2019).

In the present case, the record is insufficiently developed to allow for meaningful merits review of Appellants' first claim. The trial court precluded Dr. Wu from testifying as an expert because, in his first two pre-trial reports, he did not specify the source of the medical studies or other experts' opinions which informed his own conclusion that an anticoagulant medication would have been more harmful than helpful to Appellee. However, at the hearing on Appellants' motion for reconsideration of the order precluding Dr. Wu's expert opinion, the trial court indicated that *it had not read the most recent supplemental report attached to Appellants' motion*. **See** N.T. Trial, 4/16/2024, at 42 ("As of this moment, apparently there's a third report that I haven't seen[.]").

Significantly, in that latter report, Dr. Wu stated that his expert opinion regarding the efficacy of an anticoagulant was *not* based on any medical studies or the opinions of other experts. He asserted that his opinions were only based on his "education, training, and clinical experience as a vascular surgeon and upon review of the medical records, documents provided, and facts in this case[.]" Memorandum of Law in Support of Motion for Reconsideration of the April 2 and 9, 2024 Orders Preluding Expert Testimony by Dr. Wun, 4/12/2024, at Exhibit D.

Dr. Wu's expertise in the field of vascular surgery has not been challenged, and his testimony was not excluded for lack of credibility.

Moreover, this was not a *Frye* case,[5] in which Appellants would have had to show that the methodology forming the basis of Dr. Wu's opinion was generally accepted in the scientific community.

It therefore seems that, under the applicable procedural rules, Dr. Wu may have been able to testify as an expert about the efficacy of an anticoagulant by drawing strictly on his own knowledge and experience, as applied to the case facts. *See e.g., Tillery v. Children's Hosp. of Phila.*, 156 A.3d 1233, 1241 (Pa. Super. 2017) (approving of admission of physician's expert opinion formed after review of patient's "records, results of his radiological studies, the reports of other professionals in the case, deposition testimony, and his own research and experience dealing with children in the emergency department."); *Buttaccio v. Am. Premier Underwriters, Inc.*, 175 A.3d 311, 318 (Pa. Super. 2017) (expert "permitted to base his opinion on personal knowledge and experience, given his impressive credentials and the wealth of scholarly literature on ergonomics, much of which is his own."); *Catlin*, 56 A.3d at 920-21 ("Here, [the expert] has been board certified in obstetrics and gynecology since 1978. His failure to cite any medical literature or treatise does not render his opinion inadmissible."); *Smith v. Grab*, 705

_____

[5] Pennsylvania Courts have adopted the test for admitting expert opinions announced by the United States Supreme Court in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). The test, which forms part of Pa.R.E. 702, allows for novel scientific evidence to be "admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community." *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1043-44 (Pa. 2003).

A.2d 894, 900-01 (Pa. Super. 1997) (holding expert was permitted to rely on "knowledge, education, reading and experience of 25 years as a practicing oncologist" when opining on whether delay in cancer treatment increased patient's risk of harm).

The trial court, in its 1925(a) opinion, did not refer to the content of Dr. Wun's final report, much less indicate how it would have ruled on this issue had it realized that Dr. Wun omitted the problematic references to authority supporting his opinion. Ordinarily, to facilitate meaningful appellate review, we would try to perfect the record by remanding the case back to the trial court for additional findings or a supplemental 1925(a) opinion. Since, as will be discussed in greater length below, a new trial is being granted on other grounds, such directives are not needed.

Appellants' second claim is that the trial court erred in denying a new trial to remedy a comment by Appellee's counsel in the opening statement that Appellants did not, or more accurately, *could not*, produce a favorable expert witness on the subject of causation.

"So long as no liberties are taken with the evidence, a lawyer is free to draw such inferences as he wishes from the testimony and to present his case in the light most suited to advance his cause and win a verdict in the jury box." ***Wagner v. Anzon, Inc.***, 684 A.2d 570, 578 (Pa. Super. 1996) (quoting ***Contractors Lumber and Supply Co. v. Quinette***, 126 A.2d 442, 444 (Pa. 1956)). Despite this latitude, counsel is precluded from discussing "facts not

in evidence which are prejudicial to the opposing party." *Wagner*, 685 A.2d at 578 (quoting *Millen v. Miller,* 308 A.2d 115, 117 (Pa. Super. 1973)).

Consistent with that rule, our decisional law has drawn an important distinction between the ways in which counsel may comment on the absence of evidence. A party who succeeds in excluding evidence on legal grounds may not mislead the jury by telling it that such evidence never existed in the first place. *See e.g., Siegal*, 718 A.2d at 1277. But, where the absence of evidence does not result from a court ruling, a party has more leeway to emphasize that fact to the jury as being indicative of a weakness in an opponent's position. *See e.g., Steltz v. Meyers*, 265 A.3d 335, 348 (Pa. 2021).

The prejudicial remarks of counsel during argument may typically be addressed "within the broad powers and discretion of the trial judge and his actions will not be disturbed on appeal unless there is an obvious abuse of discretion." *Wagner*, 685 A.2d at 578 (quoting *Wilf v. Phila. Modeling & Charm Sch., Inc.,* 208 A.2d 294, 298–99 (Pa. Super. 1965)). "It is the duty of the trial judge to take affirmative steps to attempt to cure the harm, once an offensive remark has been objected to." *Siegal*, 718 A.2d at 1277.

Courts presume that the jury will "follow cautionary instructions[,] and appellant's failure to object to the instruction [may] indicate[] his satisfaction with the instruction." *Commonwealth v. Jones*, 668 A.2d 491, 504 (Pa. 1995). However, "there are certain instances where the comments of counsel

are so offensive or egregious that no curative instruction can adequately obliterate the taint." *Siegal*, 718 A.2d at 1277; *see also Martin v. Phila. Suburban Transp. Co.*, 257 A.2d 535, 537 (Pa. 1969) (quoting *McCune v. Leamer*, 119 A.2d 89, 90 (Pa. 1956)) ("Whether a court abuses its discretion in [denying a motion for a mistrial] because of improper remarks of counsel must be determined by the circumstances under which the statement was made and by the precautions taken by the court and counsel to prevent it having a prejudicial effect[.]").

A new trial may therefore be appropriate where:

the unavoidable effect of [counsel's] conduct or language was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict. **If [counsel's] misconduct contributed to the verdict, it will be deemed prejudicial and a new trial will be required**.

*Poust v. Hylton*, 940 A.2d 380, 385 (Pa. Super. 2007) (citation omitted, emphasis in original).

Here, the trial court granted Appellee's motion *in limine* to exclude Dr. Wun as an expert witness. Appellee's counsel then insinuated in the opening statement that out of over 3,000 vascular surgeons in the country, Appellants were unable to produce a single one who would have a favorable opinion of Appellants' post-surgery treatment of Appellee:

You're going to hear from a vascular surgeon expert that we're going to call . . . . **You're going to hear from the defendant [Dr. Luo] who is a vascular surgeon. And there are, other than those two, 3,127 other vascular surgeons in the United States. At least that's what Google has told me.**

***3,129 minus these two. You are not going to hear from a single vascular surgeon expert —***

N.T. Trial, 4/17/2024, at 219-20 (emphases added).

While Appellee's counsel did not finish the last sentence in the quote above, the point was made, and it could not have been lost on the jury.[6] Appellants promptly objected, and the trial court acknowledged that it was a "problem" for Appellee to "take advantage" of its evidentiary ruling. **See** N.T. Trial, 4/17/2024, at 222. The trial court then gave a general cautionary instruction which advised the jury that the statements of counsel were not evidence. The trial court suspended argument, and the proceedings continued until the parties revisited the issue the next day, after Appellants gave their opening statement.

Rather than ask for more specific instructions, Appellants renewed their motion for a mistrial. When doing so, Appellants cited an analogous medical malpractice case, **Siegal**, in which the trial court gave more elaborate curative, or cautionary, instructions than those given here, and which still had been found insufficient to remedy the prejudice of counsel's improper

_____

[6] Appellee has argued that this comment could not have been prejudicial because it was interrupted by an objection, but this is unpersuasive. We presume as a matter of law that juries will understand complex fact patterns and follow instructions on how to apply the law when entering their verdict. **See Brown v. Halpern**, 202 A.3d 687, 707 (Pa. Super. 2019) ("The law presumes that the jury will follow the instructions of the court."). Accordingly, it must also be presumed that the jury was capable of grasping counsel's basic point despite the interruption.

comment about a party's lack of an expert opinion. *See Siegal*, 718 A.2d 1274.[7]

In *Siegal*, the trial court precluded the plaintiffs' treating physician from offering expert opinion testimony against the defendant, who had been the plaintiffs' surgeon. Defendant's counsel then suggested to the jury that the witness did not give an expert opinion because the witness did not think the defendant was negligent. *See id*., at 1276.

Plaintiffs' counsel objected, and the objection was sustained. After a recess, the trial court advised the jury that they were not permitted to "hold it against" the plaintiffs that their treating physician had not opined as to whether the defendant was liable. *Id*., at 1277. The jury found in the defendant's favor, and the trial court denied the plaintiffs' motion for a new trial.

_____

[7] Both the trial court, in its 1925(a) opinion, and Appellee, in his brief, assert that Appellants waived their challenge to the trial court's curative instructions because they did not specifically object to them or propose alternative instructions. We find the lack of an objection to the curative instructions to be of no moment because in seeking a mistrial, Appellants clearly argued that *no* instructions would have been a sufficient remedy. There is no question, then, that Appellants conveyed dissatisfaction with the relief afforded to them by the trial court. As in the analogous *Siegal* case, we likewise find that Appellants' claim – insofar as they are challenging the denial of their motion for a mistrial – is preserved for appellate review. *See Siegal*, 718 A.2d at 1277 (holding that party preserved challenge to improper comment, despite not objecting to trial court's curative instruction, by thereafter seeking a ruling on motion for a new trial).

On appeal, this Court vacated the verdict, finding that "[d]efense counsel's reference to the absence of opinion testimony of [the plaintiffs'] witness was improper and outrageous, and so polluted the jury that the effect could not be cured by the curative instruction that was given[.]" *Id*. This Court reasoned that counsel's argument was "clearly improper, as it conveyed to the jury something that counsel knew to be untrue, *i.e.*, that [the plaintiffs' treating physician had an] opinion [that] was not favorable to [the plaintiffs]." *Id*. The only viable remedy was for the defendant to be granted a new trial. *See id*.

The material facts of *Siegal* are indistinguishable from those in the case at hand. Again, prior to trial, Appellants produced as their primary expert a qualified vascular surgeon who agreed with Appellants that Appellee would not have benefited from an anticoagulant medication. The trial court then excluded that expert's opinions on the ground that the basis for the opinions had not been adequately disclosed.

Despite knowing that Appellants in fact had retained an expert, Appellee's counsel inexcusably took advantage of the order excluding the expert's opinion to suggest a highly prejudicial falsehood to the jury. In the opening statement, counsel falsely represented that there was not a single vascular surgeon in the country who was willing to opine in favor of Appellants. This misrepresentation tainted the trial at its inception, as it conveyed to the

jury that Appellants' case was baseless and fatally flawed based on a premise that was objectively untrue.

The jury could easily have attributed undue weight to counsel's comment from the outset before it heard any trial evidence. This was especially so where the comment pertained to expert testimony. Courts have long recognized that expert testimony regarding factual issues of causation will often prove critical in medical malpractice actions because such matters are typically far beyond a layperson's understanding. ***See generally Grossman v. Barke***, 868 A.2d 561, 566-57 (Pa. Super. 2005). Indeed, in cases where the plaintiff has alleged a breach of the standard of medical care, an expert's opinion is required, as the absence of such testimony would leave the jury with "no basis other than conjecture, surmise or speculation upon which to consider causation." ***Toogood v. Owen J. Rogal, D.D.S., P.C.***, 824 A.2d 1140, 1149 (Pa. 2003) (quoting ***Woods v. Brumlop***, 377 P.2d 520, 523 (N.M. 1962)).

Counsel's suggestion that Appellants could not find a single expert to rebut the opinion of their own expert most assuredly could have handicapped Appellants' ability to defend against Appellee's claims.[8] The jury may indeed

---

[8] We also are troubled that counsel's conduct did not comport with the obligation to not knowingly make a false statement of material fact to a tribunal. *See* Rules of Professional Conduct §§ 3.3 (candor towards the tribunal) and 1(m)(definition of "tribunal").

have been persuaded that every potential expert on vascular surgery in the country would opine in Appellee's favor, and not Appellants'. Accordingly, as in **Siegal**, the prejudice of counsel's remark in this case was too great to be remedied by an instruction. **See Siegal**, 718 A.2d at 1277.[9]

Moreover, while the trial court correctly attempted to mitigate the prejudice of counsel's remark by telling the jury that statements by counsel are not evidence, we do not find that the generic nature of that cautionary instruction adequately compensated for the falsehood related by counsel. To attempt to adequately mitigate counsel's remarks, the trial court needed to help the jury appreciate, at a minimum, that the statement was false. The trial court did not do so, and regardless, since an instruction could not have cured the prejudice of counsel's improper remark, the trial court abused its discretion in denying Appellants' motion for a mistrial. **See Siegal**, 718 A.2d at 1277; **see also Poust**, 940 A.2d at 385; **Mirabel**, 57 A.3d at 151.

---

[9] In **Steltz v. Meyers**, 265 A.3d 335 (Pa. 2021), our Supreme Court distinguished the facts before it from those which **Siegal** and the present case have in common. The defendants' counsel in **Steltz** asked a witness to confirm whether, out of over 5,000 radiologists in the country who interpreted musculoskeletal MRIs, the plaintiff "couldn't find one of them to come into this courtroom to support [the plaintiff's fact witness who had interpreted the MRI]." The Court found this question proper in large part because the plaintiff's lack of an expert on that subject did not result from a ruling excluding such a witness. **See Steltz**, 265 A.3d at 348. "[The plaintiff] had not attempted to qualify [the fact witness] as an expert witness nor had [the plaintiff] presented a radiology expert to testify in support of [the fact witness]." **Id**. As the trial court had not precluded the plaintiff from presenting an expert, **Siegal** did "not support the . . . conclusion that the question was improper." **Id**.

Appellants' third claim is that the trial court erred in permitting Appellee's expert witness, Dr. Wu, to disclose the fact that Appellant, Reading Hospital, had once retained him as a witness in another trial.

The threshold test for the admissibility of evidence is relevance. **See** Pa.R.E. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Pa.R.E. 402. Even where evidence is relevant, it may only be admissible if its probative value is not outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. A trial court's ruling on the admission or exclusion of evidence is subject to an abuse of discretion standard of review. **See Feldman v. CP Acquisitions 25, L.P.**, 325 A.3d 691, 713 (Pa. Super. 2024).

Here, we find that the trial court did not abuse its discretion in allowing Appellee to disclose to the jury the fact that Dr. Wu had been retained as an expert by Reading Hospital in an unrelated matter. Dr. Wu's experience in that regard was relevant to his qualifications and experience. It also arguably showed that he had no bias against Reading Hospital, making him more credible as a witness giving testimony favorable to that party's opponent.

With respect to the balancing test under Rule 403, it difficult to see how the admission of this evidence could have unduly prejudiced Appellants. The underlying facts of the prior case involving Reading Hospital were not disclosed

to the jury. Moreover, Dr. Wu testified that he routinely served as an expert on behalf of both plaintiffs and defendants in malpractice actions. So there was nothing unusual about Dr. Wu testifying for Reading Hospital in one case, and then for Appellee in another. There were no facts on the record which would have reasonably led the jury to rely on that evidence to draw any negative inferences against Appellants. As we discern no abuse of discretion on the part of the trial court in admitting Dr. Wu's testimony about his past experience as Ready Hospital's expert witness, no relief is due on that issue.

Appellants' fourth and final claim is that the trial court erred in providing the jury with instructions and a verdict form which misstated the causation element of negligence, allowing Appellants to be found liable without a determination by the jury that their negligent conduct was a factual cause of Appellee's injuries. Before evaluating the merits of this claim, we must determine if it was sufficiently preserved for appellate review, or waived as Appellee and the trial court have asserted.

Our Supreme Court, in **Jones v. Ott**, 191 A.3d 782 (Pa. 2018), outlined the necessary steps for preserving a claim concerning challenges to jury charges. Of relevance to the present case, a party may preserve such an issue, in the absence of a contemporaneous objection, first "by filing a proposed instruction with the prothonotary before trial and by later raising the issue by post-trial motion." **Jones**, 191 A.3d at 788 (citing Pa.R.Civ.P. 227.1).

The party must also "secure a record ruling from the trial court upon the proposed charge." *Id*.; *see also* Pa.R.A.P. 302.

To keep the issue preserved, no further action is needed, but the issue's preservation is still contingent on the absence of an affirmative waiver. *See id*., at 791-92. A party may waive or abandon an otherwise preserved issue, for example, by declaring in response to the trial court's inquiry that she has "no issues with the charge." *Id*., at 791.

In the present case, we find that Appellants have preserved their fourth claim. At trial, they submitted proposed points for charge, as well as a proposed verdict form. They also filed a post-trial motion seeking relief from the asserted in error in the instructions and verdict form provided to the jury. Appellants obtained a ruling on the record as to the disputed factual cause instruction and the question about factual cause in the verdict form. *See* N.T. Trial, 4/22/2024, at 776-77.

The trial court later noted, prior to deliberations, that the parties had "discussed at length off the record . . . what the proposed verdict slip was going to look like[.]" *Id*., at 778. When asked by the trial court if "there is anything further we need to place on the record before [adjournment]," Appellants again specifically objected to Question Number 2 on the verdict form:

> Just out of an abundance of caution to ensure that this is on the record, we object to the language of increased risk on the verdict form Number 2 when it talks about cause. We believe that's included in the factual cause.

*Id*., at 781. The trial court did not reconsider its earlier ruling when, over Appellants' objection, it granted Appellee's motion to modify the verdict form by adding the language allowing a finding of liability based on "factual cause or an increased risk of harm." *See id*.

These steps were sufficient to preserve Appellants' claims. Moreover, Appellants did not at any point affirmatively waive their challenges to jury instructions or the verdict form. The trial court and Appellee suggest that they did so moments after the jury was charged, at which point the trial court asked the parties if they had "any additions, corrections or deletions to the charge that has been read to the jury?" N.T. Trial, 4/23/2024, at 878. Appellants' counsel replied that it had "none." *Id*.[10]

Viewing the record in context, Appellants' response cannot reasonably be construed as an affirmative waiver of their thoroughly litigated challenges. The trial court's question can only fairly be read as an inquiry into whether there were any new issues that arose from the reading of the instructions that

---

[10] Regrettably, in civil cases this seems to be a repeated scenario during charge conferences that creates ambiguity in the court's inquiry and counsel's response, leading to confusion and the potential waiver of claims. The wording used by the trial court here did not clarify whether the court was asking if there remained any objections or whether counsel had new objections in addition to what already had been ruled upon. To avoid this recurring "got ya" problem, both the court and counsel should be more precise when discussing whether there are other objections to be lodged subject to those already made and ruled upon, or whether all previous objections need to be renewed for preservation purposes.

had not already been definitively ruled upon. Had the trial court intended to revisit fully litigated issues, it would have explicitly asked for "objections," as it had done earlier in the proceedings."[11] Suggesting, based on their response, that Appellants were at that point suddenly content with the trial court's formulation of "factual cause" is utterly specious.

We now turn to the merits of Appellants' final claim.

"When a court instructs the jury, the objective is to explain to the jury how it should approach its task and the factors it should consider in reaching its verdict." **Tincher v. Omega Flex, Inc.**, 104 A.3d 328, 335 (Pa. 2014) (internal citations omitted). On review of a challenge to a jury instruction, an appellate court must "determine whether the trial court abused its discretion or offered an inaccurate statement of law controlling the outcome of the case." **Id**. Relief may be proper if "the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error." **Id**. (quoting **Commonwealth v. Chambers**, 980 A.2d

---

[11] The trial court established the procedure, or nomenclature, to be used when litigating the jury charges and verdict form. Specific "objections" to instructions and verdict questions were to be addressed separately from the parties' "requests" to make "additions" or "deletions." **See** N.T. Trial, 4/22/2023, 775. For example, when "objections" were prompted, "requests" were not entertained: "This is not the request. This is objections." N.T. Trial, 4/22/2023, at 776; **see also id**., at 775 ("Go ahead. This is objecting to the ones I'm giving. We'll get to the additions later."). It logically follows that by only asking for any new "additions, corrections or deletions," the trial court was *not* entertaining "objections," or asking for renewed challenges to previously ruled upon "requests."

35, 49–50 (Pa. 2009)). A new trial must be granted if "an erroneous jury instruction which amounted to a fundamental error or the record is insufficient to determine whether the error affected the verdict." *Id*.

Medical malpractice is a form of negligence that may be proven when the following elements are satisfied:

> (1) the physician owed a duty to the patient; (2) the physician breached that duty; (**3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient**; and (4) the damages suffered by the patient were a direct result of that harm.

*Corrado v. Thomas Jefferson Univ. Hosp.,* 790 A.2d 1022, 1030 (Pa. Super. 2001) (emphasis added, citation omitted).

The causation element of a medical malpractice cause of action does not require proof that the defendant's conduct was a "but-for" cause of the plaintiff's damages. *See id*.; *see also Winschel v. Jain*, 925 A.2d 782, 788-89 (Pa. Super. 2007). Courts have referred to an "increased risk of harm" analysis as a "relaxed standard" which lessens "the degree of certainty ordinarily required of a plaintiff's evidence to provide a basis for causation." *Mitzelfelt*, 584 A.2d at 894. "A plaintiff is entitled to an instruction on increased risk where there is competent medical testimony that a defendant's conduct at least increased the risk that the harm sustained by the plaintiff would occur." *Klein v. Aronchick*, 85 A.3d 487, 495 (Pa. Super. 2014).

Critically, though, an "increased risk of harm" should not be equated with factual (proximate) cause. A finding of increased risk of harm instead

functions as a means of allowing the fact-finder to link the defendant's conduct to the plaintiff's harm, even in certain contexts, such as a medical malpractice action, where it might be impossible to establish that an act or omission by a physician directly caused, or was a "but-for" cause of a patient's harm:

> [S]uch evidence [of increased risk of harm] furnishes the basis for the fact-finder **_to go further_ _and find that such increased risk_ _was _in turn_ a substantial factor in bringing about the_ _resultant harm_**; the necessary proximate cause will have been made out if the jury sees fit to find cause in fact.

**Sutherland v. Monongahela Valley Hosp.**, 856 A.2d 55, 60 (Pa. Super. 2004) (quoting **Hamil v. Bashline**, 392 A.2d 1280, 1288 (Pa. 1978)).[12]

As cogently stated in the passage quoted directly above, a finding of an increased risk of harm is not equivalent to a finding of factual (proximate) cause. **See id**. Once a finding of increased risk of harm has been made, the fact-finder must "go further" and determine by a preponderance of the

---

[12] In section 14.20 of the current version of the Pennsylvania Suggested Standard Civil Jury Instructions, it is not recommended for the jury to be charged on whether a party's conduct is a "substantial factor" in bringing about the plaintiff's harm. Rather, it is only recommended that the jury be advised instead on whether the defendant's conduct was a "factual cause" of the harm. Pa. SSJI (Civ) § 14.20, Medical Malpractice — Suggested Special Jury Interrogatories. Similarly, section 14.160 provides that, in medical malpractice actions, the jury should only be asked in the verdict form whether the negligence of the defendants was "a factual cause of any harm to the plaintiff?" Pa. SSJI (Civ) § 14.160, Medical Malpractice — Suggested Special Jury Interrogatories. This suggestion attempts to avoid the confusion that might be created by attempting to explain to a jury the concept of a "substantial factor". The use of "factual cause" however does not appear to be inconsistent with well-established law that refers to "substantial factor" in a negligence action.

evidence whether the increased risk of harm was "in turn a substantial factor" in bringing about the plaintiff's injuries. **See Winschel**, 925 A.2d at 789 (citing **Carrozza v. Greenbaum**, 866 A.2d 369, 380-81 (Pa. Super. 2004)); **see also Rohon v. Davies**, 232 A.3d 773, 777 (Pa. Super. 2020) (to establish proximate cause, an expert must show with a reasonable degree of certainty that the defendant physician's "conduct increased the risk of harm actually sustained, and the jury then must decide whether the conduct was a substantial factor in bringing about the harm.").

This two-part inquiry by the fact-finder directly applies in the context of medical malpractice actions in which the asserted negligence takes the form of delayed treatment. **See Winschel**, 925 A.2d at 789. For example,

> [a]lthough timely detection of breast cancer may well reduce the likelihood that the patient will have a terminal result, even with timely detection and optimal treatment, a certain percentage of patients unfortunately will succumb to the disease. This statistical factor, however, does not preclude a plaintiff from prevailing in a lawsuit. Rather, once there is testimony that there was a failure to detect the cancer in a timely fashion, and such failure increased the risk that the woman would have either a shortened life expectancy or suffered harm, **then** it is a question for the jury whether they believe, by a preponderance of the evidence, that the acts or omissions of the physician were a substantial factor in bringing about the harm.

**Mitzelfelt v. Kamrin**, 584 A.2d 888, 892 (Pa. 1990) (Emphasis added); **see also Cohen v. Kalodner**, 345 A.2d 235, 237 (Pa. Super. 1975) (affirming denial of instruction in malpractice case because it implied "that appellant can recover by proving only negligence and increased risk of harm.").

In the present case, Appellee was entitled to an instruction on "increased risk of harm" because he presented the competent expert testimony of Dr. Wu that Appellants' conduct increased the risk that the harm sustained by Appellee would occur. However, while Appellee was entitled to this instruction, it still was incumbent upon Appellee to prove, and upon the trial court to so charge, that an increased risk of harm was a factual cause of his injuries. By repeatedly equating an increased risk of harm with factual cause in both the jury charges and the verdict form, the trial court's instructions were erroneous and improperly eased Appellee's burden of proving Appellants' liability, depriving them of a fair trial. *See* N.T. Trial, 4/23/2024, at 860-61; Verdict Form, 4/28/2024, at 1.

Appellee argues nonetheless that the verdict may stand because it was possible that the jury did not rely upon an increased risk of harm to find Appellants liable, instead finding only that Appellants' conduct was a factual cause of his injuries. *See* Appellee's Brief, at 47-50. Citing "the general-verdict rule," Appellee maintains that the verdict was valid because "when the jury returns a general verdict involving two or more issues and its verdict is supported as to at least one issue, the verdict will not be reversed on appeal." *Id*., at 48 (quoting *Halper v. Jewish Family & Children's Serv.*, 963 A.2d 1282, 1288-89 (Pa. 2009)) (internal quotations omitted). "[A] defendant who fails to request a special verdict form in a civil case will be barred on appeal from complaining that the jury may have relied on a factual theory

unsupported by the evidence when there was sufficient evidence to support another theory properly before the jury." *Id*. (quoting *Halper*, 963 A.2d at 1289).

We find the general-verdict rule inapplicable here for two reasons.

First, the general-verdict rule only serves to bar challenges to a verdict as to two or more issues when a defendant has failed to request a special verdict form clarifying the factual theory on which its verdict is based. *See Cowher*, 283 A.3d at 804 (citing *Halper*, 963 A.2d at 1288-89). Here, Appellants in fact objected to the verdict form given to the jury precisely because it equated a finding of increased risk of harm with factual cause. The record also reflects that Appellants proposed a verdict slip, not accepted by the trial court, that did not equate an increased risk of harm with factual cause.

Second, this is not a case where the jury returned a general verdict based upon multiple theories of negligence. Rather, Appellee alleged in his complaint a single cause of action for negligence premised upon the sole theory that "The negligence and recklessness of Defendants, acting individually and by and through their agents, servants, and employees, as described herein, increased the risk of harm to Ronald Lewis and was a substantial factor in causing his catastrophic injuries and losses." Complaint, 9/16/2022, at ¶76. Regrettably, as explained above, the instruction and verdict form incorrectly reflected this theory because they allowed the jury to

find liability based only upon an increased risk of harm without also requiring the jury to find that the increased risk of harm was a factual cause of Appellee's injuries. *See Cowher v. Kodali*, 283 A.3d 794, 804 (Pa. 2022) (citing *Shiflett v. Lehigh Valley Health Network, Inc.*, 217 A.3d 225, 234 (Pa. 2019)) (general-verdict rule will only bar a challenge to a general verdict where "the verdict rests upon valid grounds[.]").

Thus, due to the trial court's error in charging the jury on the element of causation and the prejudicial remarks by Appellee's counsel, Appellants must be granted a new trial.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/02/2025